112 T.C. No. 21


UNITED STATES TAX COURT


ESTATE OF MONTE H. GOLDMAN, DECEASED, CAROLE SCHUTTER, f.k.a
CAROLE GOLDMAN, PERSONAL REPRESENTATIVE, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 183-97.                      Filed June 1, 1999.


        On Nov. 12, 1985, H and W executed a Property
Settlement Agreement (the agreement) in connection with
their divorce; the agreement was approved by the divorce
court.  Par. 2 of the agreement provides for a division
of marital property.  Par. 2.2.9 of the agreement
provides that "In furtherance of the equitable division
of property" H shall pay W $20,000 a month for 240
months.  The monthly payments terminate at W's death.
Par. 6.5 of the agreement provides that all transfers of
property are to be subject to the provisions of sec.
1041, I.R.C., and shall be reported on H and W's income
tax returns "as a non-taxable event".  The agreement
further provides that both W and H waive spousal support.

        H received an opinion letter from a law firm that
the $20,000 monthly payments were deductible as alimony.
On H's 1992, 1993, and 1994 Federal income tax returns,
the payments (totaling $240,000 per year) were

characterized and deducted as alimony. R determined the $240,000 payments H made to W in 1992, 1993, and 1994 were not alimony and therefore not deductible. R further determined that H's estate (H died in January 1995) is liable for an accuracy-related penalty under sec. 6662(a), I.R.C., for 1992, 1993, and 1994.

Held: In ascertaining the applicability of subpar. (B) of sec. 71(b)(1), I.R.C., the divorce or separation instrument need not mimic the statutory language of the subparagraph. The agreement reflects the substance of a nonalimony designation. Consequently, the $20,000 monthly payments H made to W in 1992, 1993, and 1994 are not deductible as alimony.

Held further: Because H reasonably and in good faith relied on the advice of an experienced, competent tax counsel, R's determination imposing the sec. 6662(a), I.R.C., accuracy-related penalties is not sustained.

Dan A. Sciullo and Daniel S. Duggan, for petitioner.

Michael W. Lloyd, for respondent.

JACOBS, Judge: In the notice of deficiency respondent determined the following income tax deficiencies and accuracy-related penalties:

| Year | Deficiency | Penalty Sec. 6662(a) |
|------|-----------|----------------------|
| 1992 | $141,645 | $27,779 |
| 1993 | 97,891 | 19,578 |
| 1994 | 57,226 | 11,445 |

After resolving a protective adjustment for the year 1992 (involving the deduction of expenses of an S corporation which passed through to Monte H. Goldman), the parties agree that the

amounts of deficiencies and accuracy-related penalties now at issue
are:

| Year | Deficiency | Penalty Sec. 6662(a) |
|------|-----------|----------------------|
| 1992 | $75,707 | $15,141 |
| 1993 | 97,891 | 19,578 |
| 1994 | 54,793 | 10,959 |

The issues remaining for decision are:  (1) Whether payments of
$240,000 Monte H. Goldman made to Sally Parker during each year in
issue were properly deductible as alimony, and (2) whether a
section 6662(a) accuracy-related penalty is applicable to each year
in issue.

All section references are to the Internal Revenue Code, and
all Rule references are to the Tax Court Rules of Practice and
Procedure.

FINDINGS OF FACT

Some of the facts have been stipulated, and the stipulation of
facts is incorporated in our findings by this reference.

Monte H. Goldman resided in Colorado on January 10, 1995, the
date of his death.  Carole Schutter (formerly Carole Goldman), the
personal representative of the Estate of Monte H. Goldman
(hereinafter referred to as petitioner), resided in Colorado at the
time the petition was filed.

On July 31, 1974, Mr. Goldman and Sally Goldman (presently
known as Sally Parker and hereinafter referred to as Ms. Parker)
married.  They had two children, one born in 1978 and a second in

1979.  On or about November 23, 1983, Mr. Goldman and Ms. Parker separated and did not live together during the years in issue. Subsequently, Ms. Parker (plaintiff) filed a Complaint for Divorce for the dissolution of her marriage to Mr. Goldman (defendant) in the Family Court of First Circuit, County of Honolulu, State of Hawaii.  On August 12, 1985, a Final Decree of Divorce was entered.

Both  Mr. Goldman and Ms. Parker had their own tax, as well as divorce, counsel.  On November 12, 1985, they executed a "Property Settlement Agreement" (the agreement) as part of the divorce proceedings.  The divorce court approved this Agreement.  The relevant portions of the agreement provide as follows:

> 1.5  Plaintiff and Defendant desire and intend by this Agreement to execute a complete, final and permanent settlement and adjustment of all property, support and other financial rights, obligations, interests, claims and disputes of every kind and nature, arising from, connected with or related to, their marital relationship, including, but not limited to, the Defendant's contention that there is no marital property and Plaintiff's claims that there is substantial marital property.

> 2.    Disposition of Marital Property and Separate Property:

> 2.1  Plaintiff and Defendant declare that they desire to divide the marital assets and liabilities so that the division of the marital property is equitable. * * *

> 2.2 Subject    to    the    conditions hereinafter set forth, Defendant hereby conveys, transfers, and assigns to Plaintiff, as her sole and separate property, all of his

right, title and interest in and to the following:

2.2.1    The condominium located at 0155 Lone Pine Road, Aspen, Colorado * * *

2.2.2    The sum of TWO HUNDRED FIFTY THOUSAND DOLLARS ($250,000) paid on August 21, 1985, receipt of which the Plaintiff hereby acknowledges.

The following sums to be paid on or before five o'clock p.m. on August 28, 1985:

a.    Three Million Seven Hundred Fifty Thousand Dollars ($3,750,000.00).

b.    Five Hundred Forty Thousand Dollars ($540,000.00).

c.    The sum of Five Hundred Fifteen Thousand Dollars ($515,000.00) payable to John S. Edmunds, Plaintiff's attorney, as and for attorneys' fees for legal services performed by Mr. Edmunds and others on behalf of Plaintiff in this action.

*      *      *      *      *      *      *

2.2.9 <u>Further Payments for Property Division</u>:

In furtherance of the equitable division of property, Defendant shall pay to Plaintiff the sum of Twenty Thousand Dollars ($20,000.00) per month for a period of 240 months commencing August 21, 1985. Receipt of the payment of August 21, 1985 is hereby acknowledged. These monthly payments shall terminate and be

discharged upon death of Plaintiff. The obligation contained herein shall survive Defendant's death and be a lien against his estate. Defendant shall have no right to prepay these monthly payments.

\*        \*        \*        \*        \*        \*        \*

6.5 The parties intend and agree that all transfers of property as provided for herein are subject to the provisions of Section 1041, Internal Revenue Code of 1954, as amended, entitled, "Treatment of Transfers of Property Between Spouses or Incident to Divorce", and that they shall be accounted for and reported on his or her respective individual income tax returns in such a manner so that no gain or loss shall be recognized as a result of the division and transfer of property as provided for herein. Each party shall file his or her Federal and State tax returns, and report his or her income and losses thereon, consistent with the foregoing intent of reporting the division and transfers of property as a non-taxable event. \* \* \*

6.6 Plaintiff shall pay, and hold Defendant harmless from, all Federal and State income taxes due as a result of the receipt by her in 1984 and 1985 of temporary spousal support, and on account of the receipt by her of unreported income from her separate property earned during marriage, in excess of losses, deductions and credits attributable thereto.

7. Spousal Support Waiver:

The parties acknowledge that as a result of the funds as and for property division and the release of marital rights and claims which Plaintiff is to receive as provided for herein she has no need for spousal support. Plaintiff expressly waives her right to spousal support from Defendant. Defendant

> expressly waives his right to spousal support
> from Plaintiff.

In 1985, Mr. Goldman made the required payments (totaling $5,055,000) pursuant to paragraph 2.2.2.

Pursuant to paragraph 2.2.9 of the agreement, Mr. Goldman paid Ms. Parker $20,000 per month during each of the years in issue (totaling $240,000 each year).  On his 1992, 1993, and 1994 Federal income tax returns, he characterized these $240,000 payments as alimony and took corresponding deductions.  Ms. Parker did not report these payments as alimony on her 1992-94 returns.

Mr. Goldman received an opinion letter, dated December 28, 1990, from the law firm of Kornfeld & Franklin of Oklahoma City, Oklahoma, with regard to the deductibility of the $240,000 payments on his returns.  This letter advised Mr. Goldman that, pursuant to the agreement, he was entitled to deduct these payments as alimony.

In the notice of deficiency, respondent determined that the $240,000 payments Mr. Goldman made to Ms. Parker in 1992, 1993, and 1994 are not alimony and thus not deductible.  Respondent further determined that petitioner is liable for the section 6662(a) accuracy-related penalty for each of the years in issue.

OPINION

Issue 1.  Deductibility of Payments Mr. Goldman Characterized as Alimony

The fundamental issue involved herein concerns the characterization of the $20,000 monthly payments Mr. Goldman made

to Ms. Parker during 1992, 1993, and 1994. Petitioner claims these payments constitute alimony; respondent claims these payments represent a division of marital property. The tax consequences to both the payor and recipient vary significantly depending upon the characterization of these payments.

Generally, property settlements (or transfers of property between spouses) incident to a divorce neither are taxable events nor give rise to deductions or recognizable income. See sec. 1041. On the other hand, amounts received as alimony or separate maintenance payments are taxable to the recipient (pursuant to sections 61(a)(8) and 71(a)) and deductible by the payor (pursuant to section 215(a)) in the year paid. For tax purposes, the phrase "alimony or separate maintenance payments" is defined in section 71(b)(1) as any cash payment meeting the following four criteria:

> (A) such payment is received by (or on behalf of) a spouse under a divorce or separation instrument,
>
> (B) the divorce or separation instrument does not designate such payment as a payment which is not includible in gross income under this section and not allowable as a deduction under section 215,
>
> (C) in the case of an individual legally separated from his spouse under a decree of divorce or of separate maintenance, the payee spouse and the payor spouse are not members of the same household at the time such payment is made, and
>
> (D) there is no liability to make any such payment for any period after the death of

> the payee spouse and there is no liability to make any payment (in cash or property) as a substitute for such payments after the death of the payee spouse.

Section 71 was amended by the Deficit Reduction Act of 1984, Pub. L. 98-369, sec. 422(a), 98 Stat. 494, 795, to establish an objective standard to distinguish between a payment received in the division of property (which is not includable in gross income) and a payment received as spousal support (which is includable in gross income). See Hoover v. Commissioner, 102 F.3d 842, 845 (6th Cir. 1996), affg. T.C. Memo. 1995-183; see also H. Rept. 98-432 (Part 2), at 1495 (1984) ("The committee bill attempts to define alimony in a way that would conform to general notions of what type of payments constitute alimony as distinguished from property settlements and to prevent the deduction of large, one-time lump-sum property settlements.").

The parties agree that Mr. Goldman's $20,000 monthly payments to Ms. Parker satisfy subparagraphs (A), (C), and (D) of section 71(b)(1). Therefore, the dispositive question is whether these monthly payments satisfy the requirement of subparagraph (B), which treats a payment as nonalimony if the governing divorce or separation instrument designates the payment as such.

In ascertaining the applicability of subparagraph (B) of section 71(b)(1), we believe the divorce or separation instrument need not mimic the statutory language of the subparagraph (e.g.,

the instrument need not specifically refer to sections 71 and 215). Rather, in our opinion, the divorce or separation instrument contains a nonalimony designation if the substance of such a designation is reflected in the instrument.

In the instant case, the language of the agreement is unambiguous; it clearly makes known that the $20,000 monthly payments Mr. Goldman made to Ms. Parker constitutes a division of marital assets and not spousal support. The payments at issue were made pursuant to paragraph 2.2.9 of the agreement, entitled "Further Payments for Property Division". That paragraph specifically states that the $20,000 monthly payments were "In furtherance of the equitable division of property." Moreover, paragraph 7 of the agreement provides that "as a result of the funds as and for property division * * * Plaintiff [Ms. Parker] expressly waives her right to spousal support from Defendant [Mr. Goldman]." (Emphasis added.)

The agreement contains a clear, explicit and express direction that the $20,000 monthly payments are not to be includable in Ms. Parker's income. See Richardson v. Commissioner, 125 F.3d 551, 556 (7th Cir. 1997), affg. T.C. Memo. 1995-554. The agreement mandates nonalimony treatment of the payments through paragraph 6.5 of the agreement which provides that the payments in question are to be subject to the provisions of section 1041 and reported on the parties' tax returns as a nontaxable event.

Reading the agreement from a reasonable, commonsense perspective, we find that it contains a nonalimony designation within the purview of subparagraph (B) of section 71(b)(1).[1] Consequently, we hold that the $20,000 monthly payments Mr. Goldman made to Ms. Parker in 1992, 1993, and 1994 constitute a division of marital property, rather than alimony, and hence are not deductible by Mr. Goldman for those years.

We have considered the remaining arguments made by the parties, and to the extent not discussed above, find them to be without merit.

Issue 2.  Section 6662(a) Accuracy-Related Penalties

The other issue for decision concerns the applicability of the section 6662(a) accuracy-related penalties.  Respondent contends that Mr. Goldman substantially understated his tax for the years in issue and is accordingly liable for the penalties.  Petitioner disagrees.

---

[1]    In Hawkins v. Commissioner, 86 F.3d 982 (10th Cir. 1996), the Court of Appeals for the Tenth Circuit, where an appeal of this case would lie, reversed our decision in 102 T.C. 61 (1994), regarding the specificity requirements of sec. 414(p)(2).  The Court of Appeals held that an agreement awarding petitioner wife $1 million from her husband's pension plan was a qualified domestic relations order which shifted the income tax liability to the wife.  Although the facts and operative Code section involved in this case differ from those involved in Hawkins, our reading of the specificity requirements of sec. 71(b)(1)(B) is analogous insofar as we find that the agreement made an effective designation without referring expressly to sec. 71 or 215.

Pursuant to section 6664(c)(1), a section 6662 penalty does not apply to any portion of an underpayment if reasonable cause existed and the taxpayers acted in good faith. Pursuant to section 1.6664-4(b)(1), Income Tax Regs., all facts and circumstances must be examined in order to determine whether a taxpayer acted with reasonable cause and in good faith.

Petitioner contends that we should not sustain respondent's imposition of the section 6662(a) accuracy-related penalties because Mr. Goldman received and relied upon an opinion letter prepared by experienced tax counsel. In order to establish good faith reliance on the advice of an adviser, the taxpayer must prove that: (1) He gave the return preparer complete and accurate information, (2) an incorrect return was a result of the preparer's mistakes, and (3) the taxpayer believed in good faith that he was relying on a competent return preparer's advice. See Metra Chem Corp. v. Commissioner, 88 T.C. 654, 662 (1987). These requirements have been met in this case. Consequently, we do not sustain respondent's determination imposing the section 6662(a) accuracy-related penalties.

To reflect the foregoing,

Decision will be entered under Rule 155.