T.C. Memo. 2008-207

UNITED STATES TAX COURT

RICHARD W. FIELDS, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

RICHARD W. FIELDS AND EKATERINA FIELDS, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 22132-06, 4256-07.    Filed August 28, 2008.

<u>Michael D. Jones</u>, for petitioners.

<u>Edwina L. Jones</u>, for respondent.

MEMORANDUM OPINION

JACOBS, <u>Judge</u>:  These consolidated cases were submitted
fully stipulated pursuant to Rule 122.  All section references
are to the Internal Revenue Code as amended, and all Rule
references are to the Tax Court Rules of Practice and Procedure.

The issues for decision are: (1) Whether certain "Deferred Payments" Richard Fields made in 2000, 2001, and 2003 to Karen Fields, his former spouse, are deductible as alimony; and (2) if not, whether Richard Fields and Ekaterina Fields (petitioners) are liable for the accuracy-related penalty under section 6662(a) as a result of their claiming an alimony deduction for that payment in 2003.

## Background

The facts have been fully stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference. Petitioners resided in New York when they filed the petitions herein.

Richard Fields filed his tax returns for 2000 and 2001 as a married taxpayer filing separately. He and Ekaterina Fields filed a joint tax return for 2003.

The deferred payments at issue herein arose as a consequence of Richard Fields's obligations to Karen Fields pursuant to a Separation, Support and Property Settlement Agreement (agreement) executed on October 7, 1999. Mr. Fields is an attorney; however, both he and Karen Fields had the advice of independent counsel in the negotiation and preparation of the agreement.

The agreement contains 19 headings and 42 numbered paragraphs. Paragraphs 3 and 4 of the agreement appear under the heading "Alimony". Paragraph 3 contains mutual waivers of claims

each party might have against the other for alimony or spousal

support except as specifically provided in paragraph 4.

Paragraph 4(a) provides:

So long as any portion of the Deferred Payments referred to
in Paragraph 15(b) remains unpaid, the Husband shall pay to
the Wife alimony at the rate of Seventy Five Thousand
Dollars ($75,000) per year, in equal monthly installments of
Six Thousand Two Hundred Fifty Dollars ($6,250), until
December 31, 2001.  * * * Commencing January 1, 2002, and on
the first day of each month thereafter until December 31,
2002, so long as any portion of the Deferred Payments
referred to in Paragraph 15(b) remains unpaid, the Husband
shall pay the Wife alimony at the rate of Fifty Thousand
Dollars ($50,000) per year, in twelve equal monthly
installments of Four Thousand One Hundred Sixty-Seven
Dollars ($4,167).

Paragraph 4(b)provides:

Alimony payments pursuant to this Paragraph 4 shall be
taxable to the Wife and deductible by the Husband, and shall
terminate forever on the first to occur of the death of
either Party or full satisfaction of the Note (as defined in
Paragraph 15(b) below); provided however, in the event the
Husband fails to pay timely any of the Deferred Payments (as
defined in Paragraph 15(b) below), the alimony payments to
the Wife shall increase by twenty percent (20%) if, after
expiration of the ten (10) day cure period, the Husband has
not become current on the Note.  Alimony shall remain at the
increased level until the Husband becomes current on the
note.

Paragraph 4(c) of the agreement provides:  "Payments made

pursuant to this paragraph shall not terminate in the event of

the Wife's remarriage", and paragraph 4(d) of the agreement

provides:  "Except as provided in paragraph 4(a) and (b), alimony

is non-modifiable."

Paragraph 15 of the agreement appears under the heading "Personalty"[1] and provides, in pertinent part:

15.  <u>Lump Sum</u>:

  (a)  At Closing, the Husband will pay the Wife Two Million Dollars ($2,000,000) in immediately available funds.  * * *

  (b)  Thereafter, the Husband shall pay to the Wife the following amounts in immediately available funds ("Deferred Payments"):
  -  Two Hundred Seventy Five Thousand Dollars ($275,000) on or before December 31, 1999; and
  -  Five Hundred Thousand Dollars ($500,000) on or before December 31, 2000; and
  -  Five Hundred Thousand Dollars ($500,000) on or before December 31, 2001; and
  -  Five Hundred Twenty Five Thousand Dollars ($525,000) on or before December 31, 2002.

  (c)  The Deferred Payments shall be evidenced by a Promissory Note (the "Note"), and delivered to the Wife at Closing.  The Deferred Payments shall be secured by an Irrevocable Letter of Instruction (the "Instruction Letter") from the Husband to the Firm [the law firm of which Mr. Fields was a partner at that time], requiring the Firm in the event of the Husband's default in payment under the Note, to pay directly to the Wife any funds or

---

[1]The heading that precedes the heading "Personalty" in the agreement is "Real Property".  Two paragraphs are set forth thereunder (par. 7 and par. 8).  Par. 7 provides for the release by Karen Fields of any interest in Mr. Fields's leasehold of a residence in London.  Par. 8 provides for the release by Karen Fields of any interest in Mr. Fields's residence in Washington, D.C.

In addition to par. 15, various other paragraphs appear under the "Personalty" heading, most of which have subheadings: "Furniture, Home Furnishings, Fine Art and Other Tangible Personal Property" (par. 9), "Automobiles" (par. 10), "Pets" (par. 11), "Boat and Jet Skis" (par. 12), "Swidler Berlin Shereff Friedman, LLP" (par. 13), "Retirement Assets" (par. 14), and par. 16 relating to mutual indemnifications from third-party claims.

assets due the Husband including without limitation salary, draws, bonuses, return of capital or other forms of compensation otherwise owed to the Husband by the [F]irm * * *.

(d)    The Promissory Note shall not bear interest and the Husband shall have the right to prepay it without penalty.  * * *

(e)    All payments to the Wife under this paragraph are tax free to her and are not modifiable.  The Husband expressly agrees that for the purpose of incorporation into a court order, the obligations set forth in Paragraph 15(b) above arise out of and are in the nature of support obligations and thus shall not be dischargeable in bankruptcy. The Husband expressly agrees that he shall not seek to discharge or release any of these obligations in bankruptcy or any other similar proceeding.  The Husband further agrees that in the event he files for bankruptcy and is relieved of any of his obligations under Paragraph 15(b), then the Wife shall have the right to petition a court of competent jurisdiction to receive an award of spousal support in an amount not to exceed the amount of the discharged Deferred Payments referred to in Paragraph 15(b).

(f)    Except as provided in this agreement, upon delivery of the Two Million Dollar ($2,000,000) lump sum payment to the Wife at Closing, all assets, accounts, and interests of the parties in joint names or in the Husband's Separate name or in the Husband's possession shall become the Husband's sole and separate property.  In addition to the assets and funds identified above as the Wife's sole and separate property, all assets, accounts and interests in the Wife's sole name shall become her sole and separate property.

Paragraph 25 provides:

25.  The Parties intend, understand and agree that all transfers of property and Deferred Payments pursuant to Paragraph 15 above (excluding alimony payments) made to the Wife pursuant to this Agreement are intended to be tax-free to the Wife, pursuant to Section 1041 of the Internal Revenue Code, or under any other sections of the Internal Revenue Code which may pertain to said transfers or payments; provided, however, that the Wife shall be solely responsible for any taxes she may incur if she subsequently sells, transfers, or otherwise disposes of the property and payments she receives pursuant to this Agreement.

Paragraph 19 of the agreement requires Mr. Fields to maintain a decreasing term life insurance policy on his life designating Karen Fields as the beneficiary and owner, with the initial face amount of the policy being equal to the unpaid balance of the deferred payments. That policy is required to remain in effect until Mr. Fields satisfies the promissory note that evidences his obligation pursuant to paragraph 15 of the agreement, and the death benefits payable thereunder to be "commensurate with the unpaid balance of the Deferred Payments."

Some of the terms of the agreement were incorporated into the Circuit Court of Fairfax County, Virginia's divorce decree dated November 5, 1999 (divorce decree). The exact language of paragraph 3 of the agreement (relating to waivers of support other than as provided in paragraph 4 of the agreement), paragraph 4(a) of the agreement (relating to monthly installments of alimony during 2001 and 2002), paragraph 4(b) of the agreement (relating to the characterization of the payments from Richard

Fields to Karen Fields as alimony for tax purposes), paragraph 4(c) of the agreement (relating to nontermination of the alimony payments upon Karen Fields's remarriage), and paragraph 4(d) of the agreement (relating to nonmodification of the alimony payments) was incorporated and reproduced in the divorce decree as paragraph 17 thereof. Paragraph 17 of the divorce decree is captioned "Support" and is the only provision in the divorce decree pertaining to spousal support. The divorce decree contains no reference to paragraph 15 of the agreement (other than the reference to paragraph 15 found in paragraph 4 of the agreement, which was incorporated and reproduced in the divorce decree).

Mr. Fields timely filed his tax return for the year 2000 with the assistance of American Express Tax & Business Services (American Express) of Rockville, Maryland, on October 15, 2001.[2] The return reported total income of $1,848,795 and reflected, among other items, a $76,250 claimed deduction for alimony. The tax shown on the return was $693,313. On December 31, 2002, Mr. Fields, with the assistance of American Express, prepared and filed an amended return for 2000 in which he reduced by $500,000 the amount of adjusted gross income he had previously reported.

---

[2]Mr. Fields's tax years 1999 and 2002 are not at issue, and the record does not reveal how he reported, for tax purposes, any payments he made to Karen Fields during those years.

The explanation for the change was: "The total alimony paid * * * was understated by $500,000 on the original tax return." The revised tax, according to the amended return, was $489,373.

Mr. Fields timely filed his tax return for the year 2001 with the assistance of Coppergate Associates International of London, England, on January 27, 2003 (pursuant to an extension of time in which to file until January 30, 2003, inasmuch as petitioner was living abroad). The return reported total income of $2,133,971 and reflected, among other items, a $568,750 claimed deduction for alimony. The tax shown on the return was $423,994.

Mr. Fields failed to make the final deferred payment of $525,000 to Karen Fields by December 31, 2002, as contemplated in the agreement. Instead, that payment was made in March 2003. Contemporaneously with the March 2003 payment, Richard and Karen Fields executed an "Agreement and Limited Mutual Release" in which, among other things, Karen Fields released Richard Fields from his obligations pursuant to "Paragraphs 15a-d (entitled Lump Sum), and Paragraphs 3-4 (entitled Alimony)" of the agreement.

Mr. Fields and Ekaterina Fields timely filed their tax return for the year 2003 with the assistance of Meridian Services, Ltd., of Charleston, South Carolina, on October 15, 2004. The return reported total income of $924,867 and

reflected, among other items, a $525,000 claimed deduction for alimony.  The tax shown on the return was $89,507.

After examining the 2000, 2001, and 2003 tax returns, respondent determined deficiencies in tax of $203,940, $195,500, and $170,797 respectively for those years.  Respondent issued a notice of deficiency to Mr. Fields for years 2000 and 2001 on July 31, 2006, and a notice of deficiency to petitioners for the year 2003 on January 4, 2007.   The deficiencies respondent determined were attributable entirely to disallowance of $500,000 of the claimed deductions for alimony in 2000 and 2001 and the $525,000 claimed deduction for alimony in 2003 (i.e., deductions attributable to payments made pursuant to paragraph 15(b) of the agreement).  In addition, in his notice of deficiency, respondent determined that for 2003 petitioners were liable for a $34,159.40 penalty under section 6662(a).[3] Respondent did not challenge the $76,250 alimony deduction claimed in 2000 or the $68,750 alimony deduction claimed in 2001 (i.e., deductions attributable to payments made pursuant to paragraph 4(a) of the agreement).

Petitioners timely petitioned this Court for a redetermination of the deficiencies.  Petitioners claim that all amounts Mr. Fields paid to Karen Fields (and not just the amounts

---

[3]On Jan. 16, 2007, respondent transmitted to petitioners an examination report for 2003 which reduced the alternative minimum tax and corresponding deficiency in tax for 2003 to $169,969 and reduced the penalty for 2003 to $33,993.80.

paid pursuant to paragraph 4(a) of the agreement) were deductible as alimony under section 215, noting:  (1) Paragraph 15 of the agreement does not specifically state that those payments are not allowable as deductions under section 215; and (2) Mr. Fields was not obligated to make payments pursuant to paragraph 15(b) in the event of Karen Fields's death.  Moreover, petitioners posit that even though the first sentence of paragraph 15(e) states that "All payments to the Wife under this paragraph are tax free to her", the deferred payments under paragraph 15(b) are in the nature of spousal support and would be tax free only in the event Mr. Fields filed for bankruptcy.

Petitioners did not address the issue of their liability for the section 6662(a) penalty for 2003 in their petition, but both they and respondent addressed that issue on brief.[4]

### Discussion

As stated in Estate of Goldman v. Commissioner, 112 T.C. 317, 322 (1999), affd. without published opinion sub nom. Schutter v. Commissioner, 242 F.3d 390 (10th Cir. 2000):

> Generally, property settlements (or transfers of property between spouses) incident to a divorce neither are taxable events nor give rise to deductions or recognizable income.  See sec. 1041.  On the other hand, amounts received

---

[4]Petitioners claimed, for the first time on brief, that interest on any underpayment should be suspended pursuant to sec. 6404(g).  Petitioners do not assert, and the record does not indicate, that the Secretary made a determination not to abate such interest, which would be reviewable by this Court pursuant to sec. 6404(h).  Hence, we deem petitioners' claim for the suspension of interest to be premature.

as alimony or separate maintenance payments are taxable to the recipient (pursuant to sections 61(a)(8) and 71(a)) and deductible by the payor (pursuant to section 215(a)) in the year paid.  For tax purposes, the phrase "alimony or separate maintenance payments" is defined in section 71(b)(1) as any cash payments meeting the following four criteria:

> "(A) such payment is received by (or on behalf of) a spouse under a divorce or separation instrument,

> (B) the divorce or separation instrument does not designate such payment as a payment which is not includible in gross income under this section and not allowable as a deduction under section 215,

> (C) in the case of an individual legally separated from his spouse under a decree of divorce or of separate maintenance, the payee spouse and the payor spouse are not members of the same household at the time such payment is made, and

> (D) there is no liability to make any such payment for any period after the death of the payee spouse and there is no liability to make any payment (in cash or property) as a substitute for such payments after the death of the payee spouse."

The parties agree that Mr. Fields's payments to Karen Fields of $76,250 in 2000 and $68,750 in 2001 made pursuant to paragraph 4(a) of the agreement constitute deductible alimony.  The parties further agree that Mr. Fields's payments to Karen Fields made pursuant to paragraph 15 of the agreement satisfy the first and third criteria of section 71(b)(1).  They disagree as to whether Mr. Fields's payments to Karen Fields pursuant to paragraph 15 of the agreement satisfy the second and fourth criteria of section 71(b)(1).  For the reasons set forth below, we hold those payments do not and thus sustain respondent's determination that

the payments Mr. Fields made to Karen Fields of $500,000 in 2000, $500,000 in 2001, and $525,000 in 2003 are not alimony.

With respect to the second criterion of section 71(b)(1), petitioners posit that in order for payments from one spouse to the other to be disqualified as alimony payments made pursuant to a separation agreement or divorce decree, the separation agreement or divorce decree must specifically provide that the payments are not includable in the recipient's income and are not deductible by the payor. Because the agreement does not contain such a specific provision, petitioners maintain that Mr. Fields's payments to Karen Fields are not disqualified as deductible alimony under section 71(b)(1)(B).

We have already stated, in Estate of Goldman v. Commissioner, supra at 323, that the divorce or separation instrument need not mimic the language of section 71(b)(1)(B). Rather, we have stated that a nonalimony designation will be found "if the substance of such a designation is reflected in the instrument." Id.

In our view, the payments to be made pursuant to paragraph 15(b) of the agreement were designed to accomplish a purpose different from that of the payments made pursuant to paragraph 4. We believe the payments made pursuant to paragraph 4 were intended to be for the support of Karen Fields, whereas the

payments made pursuant to paragraph 15 were intended to be a property settlement.  The basis of this belief is as follows.

Paragraph 15 of the agreement is concerned with the division of property between Mr. Fields and Karen Fields.  Tellingly, paragraph 15 appears under the heading "Personalty", whereas paragraph 4 appears under the heading "Alimony".  And paragraph 4 is the only paragraph of the agreement referred to in the divorce decree as requiring Mr. Fields to pay Karen Fields alimony.

Paragraph 15(e) of the agreement provides that payments under paragraph 15 are to be tax free to the Wife (i.e., Karen Fields), whereas paragraph 4(b) designates the payments under paragraph 4 from the Husband (i.e., Mr. Fields) to the Wife as alimony "taxable to the Wife and deductible by the Husband".  If all the payments to be made under both paragraphs 4 and 15 were intended to be alimony, we believe the agreement:  (1) Would not have denominated the payments differently by means of placement in separate paragraphs and under different headings, and (2) would not have contained contradictory instructions as to the inclusion (or not) of the payments in Karen Fields's income.

Moreover, the amounts payable pursuant to paragraph 15(b) of the agreement are substantially larger than those required by paragraph 4 of the agreement.  The payments made pursuant to paragraph 15(b) of the agreement, referred to as "Deferred Payments", are, in our opinion, a series of discrete amounts in

the nature of installment payments, evidenced by a promissory note and secured by an irrevocable letter of instruction to Mr. Fields's law firm. Tellingly, as further security Mr. Fields was required to maintain a decreasing term life insurance policy on his life of which Karen Fields was to be the beneficiary and owner until the promissory note evidencing Mr. Fields's obligations under paragraph 15 was satisfied. Providing such security is inconsistent with the provision in paragraph 4(b) that such an obligation was to be extinguished upon Mr. Fields's death.

Petitioners point to some provisions of the agreement which give rise to a colorable claim that the payments made pursuant to paragraph 15 were deductible alimony. For example, paragraph 25, in describing the agreed tax treatment of the payments under paragraph 15 as tax free to Karen Fields, contains a parenthetical reference to alimony payments. Paragraph 15(e) first specifies that payments made under that paragraph are tax free to Karen Fields but then characterizes the payments to be made pursuant to paragraph 15(b) as support obligations "and thus not dischargeable in bankruptcy". It further provides that Karen Fields "shall have the right to petition a court of competent jurisdiction to receive an award of spousal support in an amount not to exceed the amount of the discharged deferred payments referred to in Paragraph 15(b)." Moreover, we are mindful that

the agreement provides for an increase in the amount and duration of alimony payments under paragraph 4(a) and 4(b) in the event Mr. Fields does not timely make the payments required by paragraph 15, suggesting a linkage or interchangeability between the two types of payments.

Notwithstanding the aforesaid, we are persuaded that the agreement, when read in its entirety from a "reasonable, commonsense perspective," reflects a clear and express intent of the parties that the amounts which Mr. Fields was required to pay pursuant to paragraph 15 of the agreement constitute a division of marital assets, as opposed to spousal support, and are not to be included in the gross income of Karen Fields nor allowed as deductions to Mr. Fields. See Estate of Goldman v. Commissioner, 112 T.C. at 323. Consequently, the second criterion of section 71(b)(1), which the payments must satisfy if they are to qualify as alimony, has not been met.

With respect to the fourth criterion of section 71(b)(1), petitioners contend that the payments Mr. Fields was required to make pursuant to paragraph 15 would not continue upon Karen Fields's death, and consequently the requirement of subparagraph (D) of section 71(b)(1) is met. We disagree with petitioners' contention.

Whether a postdeath obligation exists may be determined by the terms of the divorce or separation instrument, or, if the

instrument is silent on that matter, by State law.  Morgan v.
Commissioner, 309 U.S. 78, 80-81 (1940); see also Kean v.
Commissioner, 407 F.3d 186, 191 (3d Cir. 2005), affg. T.C. Memo.
2003-163.  But there is no need to resort to State law to
determine the character of the payments at issue.[5]  Paragraph
4(b) of the agreement provides that the payments to be made
thereunder shall terminate on the death of either party or upon
the payment of all amounts due pursuant to paragraph 15,
whichever occurs first.  Such language is conspicuously lacking
in paragraph 15.  The agreement requires Mr. Fields to make
payments pursuant to paragraph 15 until fixed amounts ($500,000
in 2000, $500,000 in 2001, and $525,000 in 2002) are paid.  It
does not state that the obligation to make those payments
terminates upon the death of Karen Fields.  Therefore, the
amounts Mr. Fields paid pursuant to paragraph 15 of the agreement
do not satisfy the requirement of subparagraph (D) of section
71(b)(1).

Having sustained respondent's determination that the
payments Mr. Fields made to Karen Fields of $500,000 in 2000,
$500,000 in 2001, and $525,000 in 2003 are not alimony, we now

---

[5]Petitioners rely on Va. Code Ann. sec. 20-109.1 (2004),
which provides that upon the death or remarriage of the spouse
receiving support, spousal support shall terminate unless
otherwise provided by stipulation or contract.  We already found
that payments Mr. Fields made pursuant to par. 15 were not
spousal support payments but instead were part of a division of
marital assets.

turn our attention to respondent's determination with respect to the accuracy-related penalty under section 6662(a).

Respondent determined that petitioners' 2003 underpayment was attributable to negligence or disregard of rules or regulations under section 6662(b)(1) and/or to a substantial understatement of income tax under section 6662(b)(2). We address only respondent's claim that petitioners' underpayment for 2001 was attributable to a substantial understatement of income tax under section 6662(b)(2). We do so because a finding that there was a substantial understatement of income tax alone would be determinative that petitioners are liable for the section 6662(a) penalty.

Under section 7491(c), the Commissioner has the burden of production with respect to any penalty. Once the Commissioner meets the burden of production, the taxpayer continues to have the burden of proof with respect to whether the Commissioner's determination of the penalty is correct. Rule 142(a); Higbee v. Commissioner, 116 T.C. 438 (2001). The submission of a case without trial under Rule 122(a) does not alter the requirements otherwise applicable to adducing proof. Rule 122(b).

For purposes of section 6662(b)(2), an understatement is equal to the excess of the amount of tax required to be shown in the tax return over the amount of tax shown. Sec. 6662(d)(2)(A). The difference is considered "substantial" in the case of an

individual if the amount of the understatement for the taxable year exceeds the greater of 10 percent of the tax required to be shown in the return for that taxable year or $5,000  Sec. 6662(d)(1)(A).  The amount of the understatement must be reduced by that portion of the understatement which is attributable to (1) "the tax treatment of any item by the taxpayer if there is or was substantial authority for such treatment", sec. 6662(d)(2)(B)(i),[6] or (2) any item if (a) "the relevant facts affecting the item's tax treatment are adequately disclosed in the return or in a statement attached to the return", sec.

---

[6]Following submission of this case, by means of an attachment to their brief petitioners attempted to introduce into evidence a written opinion by a law professor in support of a claim that there was substantial authority as provided in sec. 6662(d)(2)(B)(i) for their treatment of Mr. Fields's payments to Karen Fields.  The written opinion, which does not cite any legal authorities, was not included in the stipulation of facts and exhibits submitted pursuant to Rule 122.  Consequently, the Court returned the attachment.  See Rules 143(b), 151.

Petitioners later sought, by means of a motion, to amend the stipulation of facts to include the written opinion.  Respondent objected to petitioners' motion, and we denied petitioners' motion to amend.

We are mindful that the material petitioners wish the Court to consider is dated Apr. 28, 2006, whereas petitioners' 2003 return was filed on Oct. 14, 2004.  Substantial authority for purposes of sec. 6662(d)(2)(B)(i) must exist at the time the return containing the item is filed or on the last day of the taxable year to which the return relates.  See sec. 1.6662-4(d)(3)(iv)(C), Income Tax Regs.  Accordingly, even if the material constituted "authority" as contemplated by sec. 6662(d)(2)(B)(i), which is doubtful, see sec. 1.6662-4(d)(3)(iii), Income Tax Regs., the material would not constitute substantial authority for purposes of sec. 6662(d)(2)(B)(i).

6662(d)(2)(B)(ii)(I), and (b) "there is a reasonable basis for the tax treatment of such item by the taxpayer", sec. 6662(d)(2)(B)(ii)(II).  Disclosure of an item is not effective to remove the item from the understatement to which the tax is attributable where the treatment of the item for tax purposes does not have a reasonable basis as defined in section 1.6662-3(b)(3), Income Tax Regs.  Sec. 1.6662-4(e)(2)(i), Income Tax Regs.

Section 1.6662-3(b)(3), Income Tax Regs., provides that the reasonable basis standard "is not satisfied by a return position that is merely arguable or that is merely a colorable claim."  If a return position is reasonably based on one or more of the authorities set forth in section 1.6662-4(d)(3)(iii), Income Tax Regs. (taking into account the relevance and persuasiveness of the authorities, and subsequent developments), the return position will generally satisfy the reasonable basis standard even though it may not satisfy the substantial authority standard as defined in section 1.6662-4(d)(2), Income Tax Regs.  See section 1.6662-4(d)(3)(ii), Income Tax Regs., for rules with respect to relevance, persuasiveness, subsequent developments, and use of a well-reasoned construction of an applicable statutory provision for purposes of the substantial understatement penalty.

Petitioners' 2003 return reported tax of $89,507. Respondent determined, and we agree, that the tax required to be shown on the return was $259,476. Thus, the understatement was $169,969. This amount exceeds 10 percent of the tax required to be shown in the return and obviously is greater than $5,000.

The record does not disclose on what basis petitioners claimed that Mr. Fields's payments under paragraph 15(b) to Karen Fields were alimony. Because Mr. Fields did not originally claim the 2000 payment of $500,000 as alimony, it is apparent that at one time Mr. Fields did not consider that payment to be deductible. Other than petitioners' uncorroborated claim (first set forth in their posttrial brief) that Mr. Fields changed the tax treatment of the payments made under paragraph 15(b) of the agreement on the advice of his tax return preparers, a claim discussed infra, nothing in the record indicates that petitioners relied on one or more of the authorities set forth in section 1.6662-4(d)(3)(iii), Income Tax Regs., or otherwise had a reasonable basis for deducting the payments made under paragraph 15(b) of the agreement on their 2003 return. Thus, petitioners have failed to carry their burden of showing that they had a reasonable basis for their tax treatment of the 2003 payment to Karen Fields, and accordingly the exception to the section 6662(a) penalty found in section 6662(d)(2)(B)(ii) is not applicable.

Pursuant to section 6664(c)(1), no penalty under section 6662 shall be imposed "with respect to any portion of an underpayment if it is shown that there was a reasonable cause for such portion and that the taxpayer acted in good faith with respect to such portion."  The determination of whether the taxpayer acted with reasonable cause and in good faith depends on the pertinent facts and circumstances, including the taxpayer's efforts to assess the taxpayer's proper tax liability, the knowledge and experience of the taxpayer, and the reliance on the advice of a professional, such as an accountant.  Sec. 1.6664-4(b)(1), Income Tax Regs.  Reliance on the advice of a professional, such as an accountant, does not necessarily demonstrate reasonable cause and good faith unless, under all the circumstances, such reliance was reasonable and the taxpayer acted in good faith.  Id.  In this connection, a taxpayer must demonstrate that his/her reliance on the advice of a professional concerning substantive tax law was objectively reasonable.  Goldman v. Commissioner, 39 F.3d 402, 408 (2d Cir. 1994), affg. T.C. Memo. 1993-480.  In the case of claimed reliance on an accountant who prepared the taxpayer's tax return, the taxpayer must establish that correct information was provided to the accountant and that the item incorrectly omitted, claimed, or reported in the return was the result of the accountant's error.  Westbrook v. Commissioner, 68 F.3d 868, 881 (5th Cir. 1995),

affg. T.C. Memo. 1993-634; <u>Weis v. Commissioner</u>, 94 T.C. 473, 487 (1990); <u>Ma-Tran Corp. v. Commissioner</u>, 70 T.C. 158, 173 (1978).

In their posttrial brief, petitioners claim that Mr. Fields's tax preparer, American Express, realized that it had erred in not deducting as alimony the $500,000 deferred payment Mr. Fields made in 2000 and therefore advised Mr. Fields to file an amended return to correct its error, which Mr. Fields did on December 31, 2002. Petitioners also assert on brief that their claiming deductions for the deferred payments made in 2001 and 2003 was approved by their return preparers for those years. Further, petitioners assert, because the Internal Revenue Service did not challenge the tax treatment of the deferred payments for 2000 and 2001, they had no reason to believe that respondent might disallow the claimed alimony deduction for 2003.

Although it appears that Mr. Fields had assistance from accountants in preparing his returns for each of the years in issue, no evidence was submitted as to what Mr. Fields told the preparers and what the preparers told him. See <u>Garfield v. Commissioner</u>, ___ Fed. Appx. ___ (2d Cir., Aug. 18, 2008), affg. T.C. Memo. 2006-67. There is nothing in the record to substantiate petitioners' uncorroborated and first-time assertions made in their posttrial brief that American Express admitted error in preparing Mr Fields's tax return for 2000 filed on October 15, 2001. We have no way of knowing

whether the filing of the amended 2000 tax return on August 31, 2002, was to correct an "error" made by American Express, as asserted by petitioners, or resulted from Mr. Fields's desire to claim and/or insistence on claiming the benefit of a greater alimony deduction. Nor do we have any way of knowing what information the other tax preparers (Coppergate Associates International and Meridian Services, Ltd.) had in preparing petitioners' 2001 and 2003 tax returns. Moreover, the lack of a previous challenge by respondent of Mr. Fields's claimed alimony deductions for the deferred payments made in 2000 and 2001 pursuant to paragraph 15 of the agreement does not show that petitioners had reasonable cause for the erroneous position taken for 2003.

On the limited stipulated facts before us, we cannot find that Mr. Fields, apparently a knowledgeable attorney, had reasonable cause for, or acted in good faith with respect to, changing his original position with respect to the characterization of the $500,000 payment to Karen Fields in 2000 and, adhering to an erroneous position, with respect to the $525,000 payment in 2003.

Because petitioners have failed to prove that they are entitled to relief under section 6664(c)(1), we reject their arguments that they should be relieved of the section 6662 penalty.

To reflect the foregoing,

<u>Decisions will be entered</u>

<u>for respondent</u>.