T.C. Summary Opinion 2009-126


UNITED STATES TAX COURT


GEORGE AND SUSAN GIST, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 30224-07S.            Filed August 6, 2009.


<u>Carter Vest</u>, for petitioners.

<u>Jeremy L. McPherson</u>, for respondent.


DEAN, <u>Special Trial Judge</u>:  This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect when the petition was filed.  Pursuant to section 7463(b), the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.  Unless otherwise indicated, subsequent section references are to the Internal Revenue Code (Code) in effect for the year in

issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

For 2003 respondent determined a $22,085 deficiency in petitioners' Federal income tax and an accuracy-related penalty under section 6662(a). The remaining issues[1] for decision are whether petitioners are entitled to deductions for section 179 expenses with respect to a vehicle (Ford F-250), automobile insurance, vehicle license fees, and gasoline, fuel, and oil and whether petitioners are liable for the accuracy-related penalty under section 6662(a).

## Background

Some of the facts have been stipulated and are so found. The stipulation of facts and the exhibits received into evidence are incorporated herein by reference. When the petition was filed, petitioners resided in California.

In 2003 George Gist (Mr. Gist) and Susan Gist (Mrs. Gist) resided in Oroville, California. Mr. Gist worked for All Metals,

---

[1]Petitioners presented neither evidence nor argument that they are entitled to their claimed deductions or to allowances greater than the amounts that respondent determined with respect to custom hire; other (rent); water; sec. 179 expenses consisting of a Quad, a Quad trailer, 3.5 acres of olive trees, a storage building, and six duck blinds; a special depreciation allowance under sec. 168(k); and a depreciation allowance for 7-year property with a $4,900 basis for depreciation. Petitioners are therefore deemed to have conceded or abandoned the issues. See Leahy v. Commissioner, 87 T.C. 56, 73-74 (1986); Nielsen v. Commissioner, 61 T.C. 311, 312 (1973). Petitioners also concede that the adjustments to their itemized deductions are computational matters.

Inc. in or around Santa Clara, California. Mr. Gist also owned and operated an olive orchard and pastured cows (collectively the farm activity). Mrs. Gist owned and operated Reflections Hair and Nail Studio in Oroville. Petitioners also established and operated G & S Hunting Club.

G & S Hunting Club consists of "quality" duck and goose hunting on 111 acres of land near Princeton, California. Petitioners rented that land for $3,330 for the 2003-04 hunting season. They sold three memberships in G & S Hunting Club at $1,500 each to Richard Nodlinski, Aaron Scott (Mr. Scott), and Clayton McCoy for the 2003-04 hunting season. Petitioners operated G & S Hunting Club during each hunting season through 2007.

On or about December 12, 2003, petitioners purchased a Ford F-250 for $53,625.50 (which included a service contract of $1,786 and license and titling fees of $574). On their 2003 Federal income tax return they elected under section 179 to expense the cost of the Ford F-250. They did not maintain during 2003 a written log of their expenditures or uses of their Ford F-250 or other vehicles.

Petitioners' 2003 Federal income tax return was prepared by a certified public accountant (C.P.A.). The income and expenses of G & S Hunting Club and petitioners' farming activity were reported on a single Schedule F, Profit or Loss From Farming,

which described their principal product as "OLIVES/CATTLE." The Schedule F reported gross income of $5,001, which consisted of sales of livestock and produce of $2,001 and other income of $3,000,[2] and total expenses of $77,345 for a $72,344 farm loss.

Respondent examined petitioners' 2003 Federal income tax return. During the examination petitioners signed on August 10, 2007, a Form 870, Waiver of Restrictions on Assessment and Collection of Deficiency in Tax and Acceptance of Overassessment, in which they agreed to the assessment of additional income tax of $4,077 and an accuracy-related penalty of $632. Thereafter, on October 16, 2007, respondent mailed a notice of deficiency to petitioners.

## Discussion

### I. Burden of Proof

The Commissioner's determinations in a notice of deficiency are presumed correct, and the taxpayer bears the burden to prove that the determinations are in error. See Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933); see also INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992) (stating that deductions are strictly a matter of legislative grace and taxpayers bear the burden of proving that they are entitled to claim the deduction). But the burden of proof on factual issues that affect the

---

[2]Mr. Gist conceded that petitioners understated G & S Hunting Club's income by $1,500 (i.e., they should have reported $4,500, not $3,000).

taxpayer's tax liability may be shifted to the Commissioner if the taxpayer introduces credible evidence with respect to the issue and the taxpayer satisfies certain conditions.  Sec. 7491(a)(1) and (2).  Petitioners have not alleged that section 7491(a) applies, and they have neither complied with the substantiation requirements nor maintained all required records. See sec. 7491(a)(2)(A) and (B).  Accordingly, the burden of proof remains on them.

II.  <u>Sections 162, 179, 274, 280F, 6001 and the Regulations Thereunder</u>

Section 162(a) authorizes a deduction for all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business.  And when property is used in a trade or business or held for the production of income, the taxpayer may be allowed a depreciation deduction.  Secs. 167 and 168.  Alternatively, in certain circumstances the cost of "section 179 property"[3] may be expensed and deducted in the year that the property is placed in service.  Sec. 179(a).  If the property is used for both business and other purposes, then the portion of the cost that is attributable to the business use is eligible for expensing under section 179(a) but only if more than 50 percent of the use is for business purposes.  Sec. 1.179-1(d),

---

[3]See sec. 179(d) for the definition of the term "section 179 property".

Income Tax Regs. In addition, the deduction allowable under section 179(a) with respect to any listed property is subject to the limitations of section 280F(a),[4] (b),[5] and (d)(3) in the same manner as if it were a recovery deduction allowable under section 168. Sec. 280F(d)(1); sec. 1.280F-2T(b), Temporary Income Tax Regs., 49 Fed. Reg. 42701 (Oct. 24, 1984).

The term "listed property" is defined to include passenger automobiles and any other property used as a means of transportation. Sec. 280F(d)(4)(A)(i) and (ii). The term "passenger automobile" means any four-wheeled vehicle that is manufactured primarily for use on public streets, roads, and highways and is rated at 6,000 pounds gross vehicle weight or less in the case of a truck or van. Sec. 280F(d)(5).

The parties have stipulated that the gross vehicle weight of the Ford F-250 is 8,800 pounds. The Ford F-250 therefore is excepted from the definition of "passenger automobile". See sec. 280F(d)(5). Consequently, petitioners' deduction for depreciation and section 179 expenses on Schedule C, Profit or

---

[4]Sec. 280F(a)(1) and (d)(7) limits the depreciation deduction for passenger automobiles to certain amounts for the applicable recovery period. See Rev. Proc. 2003-75, sec. 4.01 and .02, 2003-2 C.B. 1018, 1019-1022, for the applicable amounts of the limitations.

[5]Sec. 280F(b) provides that if listed property is not used predominantly in a qualified business use, then the depreciation deduction for the property is determined under sec. 168(g) (relating to the alternative depreciation system; i.e., the straight-line method) rather than sec. 168(a).

Loss From Business, is not limited by section 280F(a).  See supra note 4.  But the "catch all" provision of section 280F(d)(4)(A)(ii) (relating to any other property used as a means of transportation) nevertheless applies; and because the exception in section 280F(d)(4)(C)[6] does not apply, the Ford F-250 is listed property.  In addition, the Ford F-250 is not a qualified nonpersonal use vehicle.[7]  In short, petitioners' deductions for section 179 expenses, automobile insurance, vehicle license fees, and gasoline, fuel, and oil must be substantiated in accordance with sections 274(d) and 6001 and the regulations thereunder.

Generally, section 274(d) provides that no deductions are allowed for gifts, listed property, traveling, entertainment, amusement, or recreation unless substantiated.  Section 6001 requires taxpayers to keep records sufficient to establish the amounts of the items required to be shown on their Federal income tax returns.  If the taxpayer establishes that he has incurred a

---

[6]The term "listed property" does not include any other property used as a means of transportation if substantially all of the use of it is in a trade or business of providing to unrelated persons services consisting of the transportation of persons or property for compensation or hire.  Sec. 280F(d)(4)(C).

[7]The flush language of sec. 274(d) provides that any qualified non-personal-use vehicle (as defined in sec. 274(i)) is not subject to the substantiation requirements of sec. 274(d). See sec. 1.274-5T(k)(2)(ii), Temporary Income Tax Regs., 50 Fed. Reg. 46033 (Nov. 6, 1985), for a list of examples of vehicles that constitute qualified non-personal-use vehicles.

deductible expense yet is unable to substantiate the exact amount, the Court may estimate a deductible amount in some circumstances.  Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930).  But the Court cannot estimate a taxpayer's expenses with respect to the items enumerated in section 274(d).  Sanford v. Commissioner, 50 T.C. 823, 827 (1968), affd. per curiam 412 F.2d 201 (2d Cir. 1969); Rodriguez v. Commissioner, T.C. Memo. 2009-22.

Section 274(d) and the regulations thereunder require taxpayers to substantiate their deductions for listed property by adequate records or sufficient evidence to corroborate the taxpayer's own testimony as to:  (1) The amount of the expenditure (e.g., the cost of acquisition, maintenance or repairs, or other expenditures); (2) the amount of each business use and total use by establishing the amount of its business mileage and total mileage in the case of automobiles and other means of transportation; (3) time (i.e., the date of the expenditure or use); and (4) the business purpose for the expenditure or use.  Sec. 1.274-5T(b)(6), Temporary Income Tax Regs., 50 Fed. Reg. 46016 (Nov. 6, 1985).

The regulation further provides that taxpayers must maintain and produce such substantiation as will constitute proof of each expenditure or use.  Sec. 1.274-5T(c)(1), Temporary Income Tax Regs., 50 Fed. Reg. 46016 (Nov. 6, 1985).  Written evidence has

considerably more probative value than oral evidence, and the probative value of written evidence is greater the closer in time it is to the expenditure or use.  Id.  Although a contemporaneous log is not required, a record made at or near the time of the expenditure or use that is supported by sufficient documentary evidence has a higher degree of credibility than a subsequently prepared statement.  Id.  The corroborative evidence required to support a statement not made at or near the time of the expenditure or use must have a high degree of probative value to elevate the statement and evidence to the level of credibility reflected by a record made at or near the time of the expenditure or use supported by sufficient documentary evidence.  Id.

To satisfy the adequate records requirement, the taxpayer shall maintain an account book, a diary, a log, a statement of expense, trip sheets, or a similar record and documentary evidence that in combination are sufficient to establish each element of expenditure or use.  Sec. 1.274-5T(c)(2)(i), Temporary Income Tax Regs., 50 Fed. Reg. 46017 (Nov. 6, 1985).  The adequate record must be prepared or maintained in such manner that each recording of an element or use is made at or near the time of the expenditure or use.  Sec. 1.274-5T(c)(2)(ii), Temporary Income Tax Regs., supra.  "'[M]ade at or near the time of the expenditure or use' means [that] the elements of an expenditure or use are recorded at a time when, in relation to

the use or making of an expenditure, the taxpayer has full present knowledge of each element of the expenditure or use". Sec. 1.274-5T(c)(2)(ii)(A), Temporary Income Tax Regs., supra.

The level of detail required in an adequate record to substantiate the taxpayer's business use may vary depending on the facts and circumstances. Sec. 1.274-5T(c)(2)(ii)(C), Temporary Income Tax Regs., 50 Fed. Reg. 46018 (Nov. 6, 1985). For example, a taxpayer's use of a vehicle for both business and personal purposes and whose only business use of the vehicle is to make deliveries to customers on an established route may satisfy the adequate record requirement by recording the total number of miles driven during the taxable year, the length of the delivery route, and the date of each trip at or near the time of the trips or by establishing the date of each trip with a receipt, record of delivery, or other documentary evidence. Id.

Section 1.274-5T(c)(2)(ii)(B), Temporary Income Tax Regs., supra, provides that a written statement of the business purpose is generally required in order to constitute an adequate record of business purpose unless the business purpose is evident from the surrounding facts and circumstances. "For example, in the case of a salesman calling on customers on an established sales route, a written explanation of the business purpose of such travel ordinarily will not be required." Id.

Petitioners did not keep an adequate written record with respect to the Ford F-250 or their other vehicles. Rather, their evidence consists of a computer printout from their insurer showing that they made two payments of $289.85 in 2003, a retail installment sale contract for the Ford F-250 with a purchase price of $53,625.50, and Mr. Gist's testimony and that of his witness, Mr. Scott.

Mr. Gist testified that he purchased the Ford F-250 late in the evening on December 13, 2003. He testified that on December 14, 2003, he drove it from the dealership to his home in Oroville, put trailer hitches on it, loaded it up with equipment, such as the Quad, and "placed it into service" on the morning of December 15, 2003. He testified that on the morning of December 15, 2003, he drove the Ford F-250 from his home in Oroville to Princeton to pick up G & S Hunting Club's members, and he transported the members and their equipment to G & S Hunting Club. He testified that once the hunters were in their blinds, the Ford F-250 remained parked on G & S Hunting Club's property, unless he took the hunters to Willows, California, for supplies or lunch. He testified that he drove to G & S Hunting Club 15 days, starting December 16, 2003, except for Christmas, because he had a 7-year-old daughter who "wanted Santa Claus at the house". According to Mr. Gist, he recalls that December 15, 2003, was the day that he first placed the Ford F-250 into

service because: "That's the first chance I had to make that trip * * * [with the Ford F-250], it was kind of exciting." He also testified that it was 106 miles round trip from Oroville to G & S Hunting Club and 29 miles round trip from G & S Hunting Club to Willows. Lastly, he testified that he did not use the Ford F-250 for any other purpose in 2003.

Mr. Scott testified that Mr. Gist picked them up in Princeton and drove them to G & S Hunting Club and sometimes they went to Willows for lunch or shells. He also testified that he hunted every day from December 15 through 31, 2003, except Christmas Eve, Christmas Day, and New Year's Eve. Mr. Scott recalls that he did not hunt on December 24 and 25, 2003, because he spent those days with his father's family on the 24th and his mother's family on the 25th. He also added that he did not hunt on December 31, 2003, because he was attending a New Year's Eve party at a friend's home in Vacaville, California, that he attends every year.

Petitioners' evidence fails to establish the amount of each expenditure. For example, they provided no receipts to substantiate their claimed $4,800 deduction for gasoline, fuel, and oil. In addition, they substantiated payments of only $579.70 of their claimed $3,358 deduction for insurance and payments of only $574 of their claimed $1,219 deduction for licenses. Moreover, there is no evidence of the amount of each

business use of the Ford F-250 versus its total use, other than Mr. Gist's testimony that it was 106 miles round trip from Oroville to G & S Hunting Club and 29 miles round trip from G & S Hunting Club to Willows. Lastly, their evidence does not establish the business purpose of each expenditure or use. Accordingly, the Court holds that petitioners are not entitled to their claimed deductions for section 179 expenses with respect to the Ford F-250, automobile insurance, vehicle license fees, and gasoline, fuel, and oil. See secs. 274(d), 6001; sec. 1.274-5T(c)(1), Temporary Income Tax Regs., supra (the substantiation requirements are designed to encourage taxpayers to maintain records and documentary evidence). Respondent's determination is sustained.

III.  G & S Hunting Club:  40-Percent Reduction for Personal Use

Respondent determined that petitioners' deductions[8] with respect to G & S Hunting Club should be reduced by 40 percent because of Mr. Gist's personal use.

Mr. Gist testified that he quit hunting on a regular basis around 2001 on account of the death of his "hunting buddy", his son. He testified that when he is at G & S Hunting Club he is taking care of business such as checking water, maintenance or

_____

[8]Respondent allowed deductions of $3,000 for rent, $830 for water, and $6,549 for the Quad (as depreciation and sec. 179 expenses).

making repairs, and performing services for the members such as chasing down birds or calling birds for them, depending on the weather. According to Mr. Gist, he never used G & S Hunting Club "for that purpose" (i.e., hunting). Finally, he testified that he is not an active hunter because the "whole side of my face is all bridge", which has been knocked loose twice by a shotgun, and it is $18,000 if it breaks. But he also testified that he paid to hunt a couple of times at a club that opened next to G & S Hunting Club a couple of years after he started G & S Hunting Club to see how the property hunted and to determine whether he wanted to acquire it.

Mr. Scott testified that Mr. Gist "[brought] everyone out to the blinds, he [got] everything prepared." He also testified that Mr Gist would get out of the Ford F-250, unload the Quad, and "then drive us out there, shuttle us, basically with our equipment."

Petitioners have not carried their burden of proving that respondent erred in reducing the deductions for G & S Hunting Club by $4,152 (or 40 percent) and allocating that amount as a personal expense. The disallowance of the $4,152 as a business expense is sustained. See sec. 262(a); Rule 142(a).

IV. Accuracy-Related Penalty

Initially, the Commissioner has the burden of production with respect to any penalty, addition to tax, or additional

amount. Sec. 7491(c). The Commissioner satisfies this burden of production by coming forward with sufficient evidence that indicates that it is appropriate to impose the penalty or addition to tax. Higbee v. Commissioner, 116 T.C. 438, 446 (2001). Once the Commissioner satisfies this burden of production, the taxpayer must persuade the Court that the Commissioner's determination is in error by supplying sufficient evidence of reasonable cause, substantial authority, or a similar provision. Id.

In pertinent part, section 6662(a) and (b)(1) and (2) imposes an accuracy-related penalty equal to 20 percent of the underpayment that is attributable to negligence or disregard of rules or regulations or a substantial understatement of income tax.[9] Section 6662(c) defines the term "negligence" to include "any failure to make a reasonable attempt to comply with the provisions of this title," and the term "disregard" to include "any careless, reckless, or intentional disregard." Negligence also includes any failure by the taxpayer to keep adequate books and records or to substantiate items properly. Sec. 1.6662-3(b)(1), Income Tax Regs.

---

[9]Because the Court finds that petitioners were negligent or disregarded rules or regulations, the Court need not discuss whether there is a substantial understatement of income tax. See sec. 6662(b); Fields v. Commissioner, T.C. Memo. 2008-207.

Section 6664(c)(1) is an exception to the section 6662(a) penalty: no penalty is imposed with respect to any portion of an underpayment if it is shown that there was reasonable cause therefor and the taxpayer acted in good faith. Section 1.6664-4(b)(1), Income Tax Regs., incorporates a facts and circumstances test to determine whether the taxpayer acted with reasonable cause and in good faith. The most important factor is the extent of the taxpayer's effort to assess his/her proper tax liability. Id. "Circumstances that may indicate reasonable cause and good faith include an honest misunderstanding of fact or law that is reasonable in light of * * * the experience, knowledge, and education of the taxpayer." Id.

During the examination of petitioners' 2003 Federal income tax return they agreed to the assessment of additional income tax of $4,077 and an accuracy-related penalty of $632. At trial Mr. Gist conceded that petitioners understated G & S Hunting Club's income by $1,500. See supra note 2. In addition, petitioners effectively conceded that they are not entitled to their claimed deductions or to allowances greater than the amounts that respondent determined with respect to custom hire; rent; water; section 179 expenses consisting of the Quad, the Quad trailer, 3.5 acres of olive trees, a storage building, and six duck blinds; a special depreciation allowance under section 168(k); and a depreciation allowance for 7-year property with a $4,900

basis for depreciation.  See <u>supra</u> note 1.  Petitioners also have not maintained adequate books or records nor substantiated their deductions in accordance with sections 274 and 6001 and the regulations thereunder.  See sec. 1.6662-3(b)(1), Income Tax Regs.  The Court, therefore, finds that respondent has met his burden of production.  Petitioners were negligent, and they have not established a defense for their noncompliance with the Code's requirements.  Respondent's determination is therefore sustained.

Other arguments made by the parties and not discussed herein were considered and rejected as irrelevant, without merit, and/or moot.

To reflect the foregoing,

<u>Decision will be entered</u>
<u>for respondent</u>.