**PURSUANT TO INTERNAL REVENUE CODE SECTION 7463(b),THIS OPINION MAY NOT BE TREATED AS PRECEDENT FOR ANY OTHER CASE.**

T.C. Summary Opinion 2013-80

UNITED STATES TAX COURT

MARK A. STEVES AND STACEY L. STEVES, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

MARK A. STEVES, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 3561-12S, 3562-12S.          Filed October 21, 2013.

<u>P. Elizabeth Pirsch</u>, for petitioners.

<u>Christopher R. Moran</u>, for respondent.

SUMMARY OPINION

CHIECHI, <u>Judge</u>:  These consolidated cases were heard pursuant to the

provisions of section 7463 of the Internal Revenue Code in effect when the peti-

tions were filed.[1]  Pursuant to section 7463(b), the decisions to be entered are not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

Respondent determined deficiencies of $21,341.29 and $22,512.37 in the Federal income tax (tax) of petitioner Mark A. Steves (Mr. Steves) for his taxable years 2007 and 2008, respectively, and a deficiency of $32,102.52 in the tax of Mr. Steves and petitioner Stacey L. Steves (Ms. Steves) for their taxable year 2009.

The issue remaining for decision is whether certain payments that Mr. Steves made during 2007, 2008, and 2009 constitute alimony deductible under section 215 for those respective years.  We hold that they do not.

## Background

All of the facts in these cases, which the parties submitted under Rule 122, have been stipulated by the parties and are so found.

Mr. Steves and Ms. Steves resided in Virginia at the time the respective petitions in these cases were filed.

---

[1]Hereinafter, all section references are to the Internal Revenue Code in effect for the years at issue.  All Rule references are to the Tax Court Rules of Practice and Procedure.

Around June 24, 2005, Mr. Steves and Carolyn Louise Robards (Ms. Robards), who were married on July 1, 1995, jointly purchased certain real property (Braddock Road property) at 7117 Braddock Road, Springfield, Virginia. Mr. Steves and Ms. Robards financed the purchase of the Braddock Road property with a mortgage loan (mortgage) that they obtained from HSBC Mortgage Corp. Since Mr. Steves and Ms. Robards purchased the Braddock Road property to at least March 14, 2013, they coowned that property and were coobligors on the mortgage.

At a time not established by the record, Mr. Steves and Ms. Robards decided to end their marriage. Around May 25 and June 2, 2006, Ms. Robards and Mr. Steves, respectively, signed a document titled "SUPPORT AND PROPERTY SETTLEMENT AGREEMENT" (settlement agreement), pursuant to which they intended to "make a full, final, complete and equitable property division, a final settlement, adjustment, compromise and determination of all right of support and maintenance by either party against the other by reason of their marriage, and to adjust and settle any and all other rights either may have against the other arising out of the marriage". The settlement agreement provided in pertinent part:

> **6.       SPOUSAL SUPPORT AND MAINTENANCE**. Each party understands that he or she may be entitled to alimony, spousal support and maintenance and that, under the laws of the Common-

wealth of Virginia, either party can request a reservation of the right to receive alimony. They further understand that if a court makes an award of alimony, that award may be increased or decreased by the court upon proper motion due to a change in circumstances. However, they understand that if any amount of alimony is specified in a written agreement between them or is waived, then such waiver or agreed alimony payment cannot thereafter be changed by the court unless agreed to by the parties. Taking into consideration all relevant facts and circumstances, including, but not limited to, the financial circumstances of the parties, their employment, income and income potentials, and the division of marital property provided for elsewhere in this Agreement, the parties agree as follows with regard to spousal support.

   A. Dr. Steves neither seeks, desires nor requires the payment of spousal support from Ms. Robards, now or in the future. Accordingly, Dr. Steves hereby waives and releases any right that he may have for alimony, support and maintenance or for a reservation of alimony, support and maintenance from Ms. Robards, * * *

   B. Dr. Steves shall pay to Ms. Robards for alimony, spousal support and maintenance the sum of Four Thousand Five Hundred Dollars ($4,500.00) per month, commencing on the first day of the month after Ms. Robards moves into the Braddock Road Property, and continuing on the first calendar day of each month thereafter for twelve (12) years or until Dr. Steves has made one-hundred and forty-four (144) monthly spousal support payments in the amount set forth herein.

   (i) Dr. Steves' obligation to pay spousal support to Ms. Robards pursuant to this Agreement shall end on the earliest to occur of the following events: a) the death of either party; (b) the remarriage of Ms. Robards; c) Ms. Robards' habitual cohabitation for a period of twelve months or longer in a relationship analogous to a marriage; or (d) Dr. Steves having made 144 monthly spousal support payments to Ms. Robards as set forth above.

\*      \*      \*      \*      \*      \*      \*

        (iv)    Such support and maintenance payments made pursuant to this Agreement shall be deemed taxable income to Ms. Robards and deductible by Dr. Steves for federal and state income tax purposes, to the fullest extent permitted by applicable federal and state income tax law and regulations.

\*      \*      \*      \*      \*      \*      \*

**8.**    **REAL PROPERTY**

\*      \*      \*      \*      \*      \*      \*

        **B.**    **Braddock Road Property.**  The parties presently own as tenants by the entirety real property located in the Fairfax County, and more particularly identified as 7117 Braddock Road, Springfield, Virginia, hereinafter described as the "Braddock Road Property." The Braddock Road Property is encumbered by a deed of trust currently held by HSBC Mortgage Corporation, to which the parties are jointly liable. Both parties warrant that, other than these encumbrances, they know of no other debts, liens, loans, encumbrances or the like associated with the Braddock Road Property that have occurred during their joint ownership of said property. The parties agree as follows with respect to the Braddock Road Property:

        1.    The parties shall continue to co-own the Braddock Road Property after their divorce, if any, and Ms. Robards shall have exclusive use, possession and occupancy of the Braddock Road Property for so long as she desires to occupy it as her primary residence. Dr. Steves stipulates and warrants that he shall at no time institute proceedings to force the sale or partition of the Braddock Road Property or do anything to interfere with Ms. Robards' use and enjoyment, possession and occupancy of the property.

        2.    During Ms. Robards' use, possession and occupancy of the Braddock Road Property and until she attains age

59 ½, Dr. Steves shall be solely responsible for all costs arising out of or in connection with said property, including, without limitation, the mortgage indebtedness (mortgage amortization and interest, real estate taxes, and insurance), dues, assessments, maintenance and repairs, and for the following other expenses associated with property: utilities (electric, gas, water/sewer), lawn care and maintenance, capital improvements, and all maintenance and major repairs (those costing $250.00 or more) to the premises. After Ms. Robards turns 59 and ½ years old, and for so long thereafter as she continues to have use, possession and occupancy of the Braddock Road Property, she and Dr. Steves shall share equally the mortgage indebtedness (mortgage amortization and interest, real estate taxes, and insurance). Dr. Steves shall continue to be solely financially responsible for all dues, assessments, maintenance and repairs, and for the following other expenses associated with Braddock Road property, including, but not limited to, utilities (electric, gas, water/sewer), lawn care and maintenance, capital improvements, and all maintenance and major repairs (those costing $250.00 or more) to the premises. Dr. Steves shall indemnify, defend, and hold Ms. Robards harmless from all liability arising therefrom. During her use, possession and occupancy of the Braddock Road Property, Ms. Robards shall be responsible for paying the costs of her groceries, house cleaning, minor repairs (those under $250), telephone, trash, and cable/internet, and her personal expenses associated with living in the Braddock Road Property.

\*        \*        \*        \*        \*        \*        \*

3.    The proceeds from the sale of the Braddock Road Property shall be applied as follows: (a) payment of the mortgage indebtedness secured by the property, (b) payment of commissions and other customary and reasonable costs associated with the sale, and c) payment to Dr. Steves of an amount equal to his documented pay-down of the principal on the first deed of trust from the date of divorce, if any, to the date of the closing. The parties shall thereafter equally divide the remaining net proceeds from the sale of the property. The settlement attorney or agent for the sale of the

Braddock Road Property shall be authorized and directed to divide the proceeds of sale between the parties as provided herein, and to disburse the proceeds to each by separate check.

\*  \*  \*  \*  \*  \*  \*

**18.   TAX INTENT AND TAX ADVICE**. It is the intent of the parties that all transfers of assets and other monetary awards pursuant to this Agreement, except spousal support payments, are nontaxable transfers between the parties incident to their divorce. The parties acknowledge that their attorneys have not rendered tax advice regarding the ramifications of this Agreement, and the parties have been advised that they should contact competent tax professionals should they have any questions regarding the taxable effect of any payments, credits, or transactions specified in this Agreement, or other tax questions.

In September 2006, Mr. Steves and Ms. Robards were divorced pursuant to a final divorce decree. That decree incorporated the settlement agreement.

During 2007, 2008, and 2009, pursuant to paragraph 6.B. of the settlement agreement, Mr. Steves paid to Ms. Robards $54,000, $48,750, and $54,000, respectively, as "alimony, spousal support and maintenance". (We shall sometimes refer collectively to the payments during 2007, 2008, and 2009 that Mr. Steves made pursuant to paragraph 6.B. of the settlement agreement as the alimony payments under paragraph 6.B.)

During 2007, 2008, and 2009, pursuant to paragraph 8.B.2. of the settlement agreement, Mr. Steves made certain payments totaling $55,586, $56,443, and

$67,133, respectively, for "mortgage indebtedness (mortgage amortization and interest, real estate taxes, and insurance), dues, assessments, maintenance and repairs" with respect to the Braddock Road property and for the "following other expenses associated with [that] property:  utilities (electric, gas, water/sewer), lawn care and maintenance, capital improvements and all maintenance and major repairs".[2]  (We shall sometimes refer collectively to the payments during 2007, 2008, and 2009 that Mr. Steves made pursuant to paragraph 8.B.2. of the settlement agreement as the payments at issue.)

Mr. Steves filed Form 1040, U.S. Individual Income Tax Return, for each of his taxable years 2007 (2007 return) and 2008 (2008 return), and Mr. Steves and Ms. Steves filed a tax return for their taxable year 2009 (2009 return).  In each of those returns, Mr. Steves claimed a deduction for the total amount of alimony payments under paragraph 6.B. during each of those years.  In each of the 2008 return and the 2009 return, an alimony deduction also was claimed for

---

[2]The record does not establish the nature or the amount of each of the various expenses relating to the Braddock Road property that Mr. Steves paid pursuant to paragraph 8.B.2. of the settlement agreement during each of the years 2007, 2008, and 2009.

the total amount of expenses that Mr. Steves had paid pursuant to paragraph 8.B.2. of the settlement agreement during each of those years.[3]

Respondent issued respective notices of deficiency (notices) to Mr. Steves with respect to his taxable years 2007 and 2008 and to Mr. Steves and Ms. Steves with respect to their taxable year 2009. In those notices, respondent determined to disallow the deduction claimed as alimony for each of the taxable years 2008 and 2009 for the payments that Mr. Steves had made pursuant to paragraph 8.B.2. of the settlement agreement during each of those years.[4]

## Discussion

Mr. Steves and Ms. Steves bear the burden of establishing that the determinations in the respective notices that remain at issue are erroneous. See Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). That these cases were submitted fully stipulated does not change that burden or the effect of a failure of proof. See Rule 122(b); Borchers v. Commissioner, 95 T.C. 82, 91 (1990), aff'd, 943 F.2d 22 (8th Cir. 1991).

---

[3]In the petition, Mr. Steves claimed as an affirmative issue that he is entitled for his taxable year 2007 to an alimony deduction for the payments that he had made pursuant to paragraph 8.B.2. of the settlement agreement during that year.

[4]See supra note 3. Respondent did not disallow the deduction claimed as alimony for each of taxable years 2007, 2008, and 2009 for the alimony payments under paragraph 6.B. during each of those years.

The only issue remaining for decision is whether the payments at issue that Mr. Steves made pursuant to paragraph 8.B.2. of the settlement agreement constitute alimony deductible under section 215.

Section 215(a) allows an individual to deduct "an amount equal to the alimony or separate maintenance payments paid during such individual's taxable year." Section 215(b) defines the term "alimony or separate maintenance payment" for purposes of section 215 to mean "any alimony or separate maintenance payment (as defined in section 71(b)) which is includible in the gross income of the recipient under section 71."

Section 71(b)(1) provides the following definition of the term "alimony or separate maintenance payment":

> SEC. 71.  ALIMONY AND SEPARATE MAINTENANCE PAYMENTS.
>
> (b) Alimony or Separate Maintenance Payments Defined.--For purposes of this section--
>
> (1) In general.--The term "alimony or separate maintenance payment" means any payment in cash if--
>
> (A) such payment is received by (or on behalf of) a spouse under a divorce or separation instrument,
>
> (B) the divorce or separation instrument does not designate such payment as a payment which is not

includible in gross income under this section and not allowable as a deduction under section 215,

      (C) in the case of an individual legally separated from his spouse under a decree of divorce or of separate maintenance, the payee spouse and the payor spouse are not members of the same household at the time such payment is made, and

      (D) there is no liability to make any such payment for any period after the death of the payee spouse and there is no liability to make any payment (in cash or property) as a substitute for such payments after the death of the payee spouse.

Section 71(b)(2) provides the following definition of the term "divorce or separation instrument" used in section 71(b)(1)(A) and (B):

SEC. 71.  ALIMONY AND SEPARATE MAINTENANCE
            PAYMENTS.

      (b) Alimony or Separate Maintenance Payments Defined.--For purposes of this section--

\*       \*       \*       \*       \*       \*       \*

      (2) Divorce or separation instrument.--The term "divorce or separation instrument" means--

      (A) a decree of divorce or separate maintenance or a written instrument incident to such a decree,

      (B) a written separation agreement, or

>     (C) a decree (not described in subparagraph (A))
>     requiring a spouse to make payments for the support or
>     maintenance of the other spouse.

The parties agree that the payments at issue must meet all four requirements in section 71(b)(1)(A) through (D) in order to constitute alimony or separate maintenance payments that are deductible under section 215(a) and includible in the income of the recipient under section 71(a).[5]  They disagree as to whether those payments satisfy the respective requirements in section 71(b)(1)(A), (B), and (D).

It is respondent's position that the payments at issue do not satisfy the respective requirements in section 71(b)(1)(A), (B), and (D).  We consider only whether the payments at issue satisfy the requirement in section 71(b)(1)(B).  That is because resolution of that question resolves the issue of whether the payments at issue constitute alimony deductible under section 215.

The requirement in section 71(b)(1)(B) is satisfied with respect to a payment under a divorce or separation instrument if that instrument, when read from a reasonable, commonsense perspective, "does not designate such payment as a payment which is not includible in gross income under this section and not allow-

---

[5]Consistent with sec. 71(a), sec. 61(a)(8) defines gross income to mean all income from whatever source derived, including alimony and separate maintenance payments.

able as a deduction under section 215". <u>See</u> <u>Estate of Goldman v. Commissioner</u>, 112 T.C. 317, 323-324 (1999), <u>aff'd without published opinion sub nom.</u> <u>Schutter v. Commissioner</u>, 242 F.3d 390 (10th Cir. 2000). The term "designate" as used in section 71(b)(1)(B) means "to make known directly." <u>Richardson v. Commissioner</u>, 125 F.3d 551, 556 (7th Cir. 1997), <u>aff'g</u> T.C. Memo. 1995-554. "For a * * * [divorce or separation] instrument to make known directly that a spouse's payments are not to be treated as income, * * * the instrument must contain a clear, explicit and express direction to that effect." <u>Id.</u>

It is the position of respondent that although paragraph 8.B.2. of the settlement agreement does not designate the payments at issue as payments that are not includible in gross income under section 71 and not allowable as deductions under section 215, paragraph 18 of the settlement agreement (paragraph 18) does.[6] Mr. Steves and Ms. Steves disagree. It is their position that paragraph 18 does not designate the payments at issue as payments that are not includible in gross income under section 71 and not allowable as deductions under section 215. In support of that position, Mr. Steves and Ms. Steves argue that the phrase

_____

[6]Paragraph 18, which is titled "<u>TAX INTENT AND TAX ADVICE</u>", provides in pertinent part: "It is the intent of the parties that all transfers of assets and other monetary awards pursuant to this Agreement, except spousal support payments, are non-taxable transfers between the parties incident to their divorce."

"spousal support payments" in paragraph 18[7] is ambiguous and refers to all payments that are required under the settlement agreement and that constitute spousal support under the law of the Commonwealth of Virginia (Virginia law). According to Mr. Steves and Ms. Steves, paragraph 8.B.2. of the settlement agreement required Mr. Steves to make the payments at issue, and those payments constitute spousal support under Virginia law.

We do not find the phrase "spousal support payments" in paragraph 18 to be ambiguous, as Mr. Steves and Ms. Steves argue. We also reject their argument that we must examine Virginia law to answer the question that we must resolve under section 71(b)(1)(B).

In addition to paragraph 18, the only other place in the settlement agreement where the phrase "spousal support payments" is used is paragraph 6 of that agreement, which is titled "SPOUSAL SUPPORT AND MAINTENANCE". In paragraph 6.B. of the settlement agreement pursuant to which Mr. Steves made the respective alimony payments that were deducted in each of the 2007 return, the 2008 return, and the 2009 return and that respondent allowed as deductions,[8] the phrase "spousal support payments" is used two times and refers to the pay-

---

[7]See supra note 6.

[8]See supra note 4.

ments for "alimony, spousal support and maintenance", "alimony, support, and maintenance", "support and maintenance" to which paragraph 6 of the settlement agreement pertains and which are used interchangeably in that paragraph.

We conclude that the phrase "spousal support payments" in paragraph 18 refers only to the "spousal support payments" that Mr. Steves made pursuant to paragraph 6.B. of that agreement and not to the payments that he made pursuant to paragraph 8.B.2. of that agreement. Mr. Steves made the payments at issue pursuant to paragraph 8.B.2. of the settlement agreement, not pursuant to paragraph 6.B. of that agreement. Paragraph 18 designated those payments at issue as "non-taxable transfers between the parties incident to their divorce", that is to say, as amounts not includible in the income of the payee (Ms. Robards) and, as a result, amounts not deductible by the payor (Mr. Steves). See sec. 215(a) and (b).

On the record before us, we find that the payments at issue that Mr. Steves made pursuant to paragraph 8.B.2. of the settlement agreement do not satisfy the requirement in section 71(b)(1)(B). On that record, we further find that the payments at issue do not constitute alimony deductible under section 215.

We have considered all of the contentions and arguments of the parties that are not discussed herein, and we find them to be without merit, irrelevant, and/or moot.

To reflect the foregoing and the concessions of the parties,

Decisions will be entered under

Rule 155.