T.C. Summary Opinion 2021-17

UNITED STATES TAX COURT

TODD A. MINARICH AND JUDY A. MINARICH, Petitioners <u>v.</u>
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 24208-16S.                    Filed July 1, 2021.

Todd A. Minarich and Judy A. Minarich, pro sese.

<u>Stanislaw Balazia</u> and <u>Briseyda Villalpando</u>, for respondent.

SUMMARY OPINION

CARLUZZO, <u>Chief Special Trial Judge</u>:  This case was heard pursuant to

the provisions of section 7463 of the Internal Revenue Code in effect when the

petition was filed.[1]  Pursuant to section 7463(b), the decision to be entered is not

_____

[1]Unless otherwise indicated, section references are to the Internal Revenue
Code of 1986 as amended, in effect for the years in issue, and Rule references are
(continued...)

reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

Respondent issued a separate notice of deficiency dated August 4, 2016 (notices), to each petitioner determining deficiencies in petitioners' 2013 and 2014 Federal income tax and imposing section 6662(a) accuracy-related penalties as follows:

| Year | Deficiency | Penalty sec. 6662(a) |
|------|-----------|----------------------|
| 2013 | $8,059 | $1,611.80 |
| 2014 | $9,223 | $1,844.60 |

After concessions,[2] the issues for decision are whether: (1) petitioners' pro rata share of income from an S corporation should be increased by $43,549 and

---

[1](...continued)
to the Tax Court Rules of Practice and Procedure.

[2]Petitioners concede that they received and failed to report dividend income of $39 for 2014 and the following adjustments in the notices related to their S corporation: (1) $3,998 of the $5,016 deduction claimed for advertising for 2013; (2) $1,450 of the $4,044 deduction claimed for utilities for 2013; (3) $1,624 of the $2,453 deduction for telephone expenses for 2013; and (4) $3,233 of the $21,644 deduction for cost of goods sold for 2014. Petitioners also concede that they are not entitled to $1,687 of the $2,694 deduction for repairs claimed on their Schedule E, Supplemental Income and Loss, for 2013 as well as $219 of the $769 deduction claimed for repairs claimed on their Schedule E for 2014. Respondent concedes the adjustments in the notices related to petitioners' S corporation as follows: (1) $450 and $425 for accounting for 2013 and 2014, respectively; (2) $1,018 for advertising expenses for 2013; (3) $620 for utilities for 2013; and (4) $50 for equipment rental expenses for 2013.

$39,720 for 2013 and 2014, respectively, as a result of disallowed deductions claimed by the S corporation; (2) petitioners are entitled to various deductions claimed on Schedule E, Supplemental Income and Loss; and (3) petitioners are liable for a section 6662(a) accuracy-related penalty for either year in issue.

## Background

Some of the facts have been stipulated and are so found. At the time the petition was filed, petitioners resided in Illinois.

Petitioners were married during the years in issue but separated in 2014.

On January 28, 1994, petitioners incorporated Real Appeal, Inc. (Real Appeal), a corporation organized under the laws of Illinois. Real Appeal is taxed as an S corporation, and during 2013 and 2014 Mr. Minarich owned 49% of its stock and Mrs. Minarich owned the remaining 51%. Mrs. Minarich essentially ran the business, while Mr. Minarich's involvement was limited to computer and financing matters. Petitioners originally formed Real Appeal for the purpose of operating an ice cream business.

In 2006 petitioners transitioned Real Appeal to a computer business, which coincided with their purchase of a home in Peru, Illinois (Peru property), where they resided for several years. Petitioners obtained a mortgage from La Salle State

Bank to finance the purchase of the Peru property. The Peru property was situated on a 3/4-acre tract.

Within two years of the purchase of the Peru property, petitioners began to develop 5,000 square feet of commercial space comprising four rental units on the land behind the house (commercial development). However, a recession halted the commercial development and petitioners ultimately abandoned it, leaving two of the four rental units unfinished.

In or around 2009 petitioners moved out of the Peru property and subsequently held out the house on the property for rent (rental property). The rental property was rented during the years in issue.

In 2010 petitioners, through Real Appeal, began to sell gluten-free baking products and mixes. During 2013 and 2014 Real Appeal operated out of one of the finished spaces in the commercial development; the products were sold in retail stores, including Hy-Vee, Whole Foods, Sunset Foods, and approximately a dozen independent retail establishments. Mrs. Minarich promoted Real Appeal's gluten-free baking business at various food exhibits, markets, and fairs.

Mrs. Minarich used QuickBooks to track Real Appeal's expenses for Federal income tax return preparation purposes; but no reports generated by that program were made available at trial. Instead, in a schedule that appears to have

been prepared shortly before trial petitioners' accountant prepared income statements for Real Appeal for 2013 and 2014 showing revenue as well as cost of goods sold and expenses that petitioners claim to have paid in connection with Real Appeal. Bank and credit card statements, sales receipts, canceled checks, and other documents included in petitioners' exhibits substantiate some of those expenses. Petitioners provided these source documents as well as the QuickBooks reports to their paid income tax return preparer to assist him in the preparation of their 2013 and 2014 Federal income tax returns.

On the Schedule E included with each return petitioners reported the income and expenses attributable to the rental property. The amount of income shown for each year is not in dispute. As relevant here, the following deductions are claimed on the Schedules E:

| Expense | 2013 | 2014 |
|---|---|---|
| Depreciation expense or depletion | $5,769 | $5,769 |
| Mortgage interest paid to banks, etc. | 9,974 | 9,077 |
| Repairs | 2,694 | 769 |

Real Appeal filed a Form 1120S, U.S. Income Tax Return for an S Corporation, for each year, also prepared by petitioners' return preparer. The 2013 and 2014 Forms 1120S show losses of $38,580 and $32,323, respectively, reported as follows:

|                                      | 2013      | 2014       |
|--------------------------------------|-----------|------------|
| Income:                              |           |            |
| Gross receipts or sales              | $5,172    | $5,107     |
| Cost of goods sold                   | 4,649     | 21,644     |
| Gross profit                         | 523       | (16,537)   |
| Net gain (loss) from Form 4797       | -0-       | 1,640      |
| Total income (loss)                  | 523       | (14,897)   |
| Expenses:                            |           |            |
| Repairs and maintenance              | 193       | -0-        |
| Rents                                | 3,600     | 50         |
| Interest                             | 1,005     | -0-        |
| Depreciation                         | 7,792     | 8,825      |
| Advertising                          | 5,016     | -0-        |
| Other deductions                     | 21,497    | 8,551      |
| Total                                | 39,103    | 17,426     |
| Net profit (loss)                    | (38,580)  | (32,323)   |

Petitioners' pro rata shares of Real Appeal's net operating losses for 2013 and 2014 are taken into account in the computation of the adjusted gross income shown on petitioners' returns.

In the notices respondent: (1) increased petitioners' pro rata share of income from Real Appeal by $43,549 and $39,720 for 2013 and 2014, respectively, as a result of disallowed deductions claimed by the S corporation; (2) disallowed Schedule E expense deductions related to the rental property for depreciation, mortgage interest paid to banks, etc., and repairs for 2013 and 2014; and (3) imposed a section 6662(a) accuracy-related penalty on various grounds for

each year.  Some of the adjustments made in the notices have been agreed to between the parties or conceded by one or the other of them, and other adjustments are computational.  None of those adjustments will be addressed further in this opinion.

## Discussion

As we have observed in countless opinions, deductions are a matter of legislative grace, and the taxpayer bears the burden of proving entitlement to any claimed deduction.[3]  Rule 142(a); INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934).  This burden requires the taxpayer to substantiate expenses underlying deductions claimed by keeping and producing adequate records that enable the Commissioner to determine the taxpayer's correct tax liability.  Sec. 6001; Hradesky v. Commissioner, 65 T.C. 87, 89-90 (1975), aff'd per curiam, 540 F.2d 821 (5th Cir. 1976); Meneguzzo v. Commissioner, 43 T.C. 824, 831-832 (1965).  A taxpayer claiming a deduction on a Federal income tax return must demonstrate that the deduction is allowable pursuant to some statutory provision and must further substantiate that the expense to which the deduction relates has been paid or

_____

[3]Petitioners do not claim and the record does not otherwise demonstrate that the provisions of sec. 7491(a) are applicable here, and we proceed as though they are not.

incurred. See sec. 6001; Hradesky v. Commissioner, 65 T.C. at 89-90; sec. 1.6001-1(a), Income Tax Regs.

Taxpayers may deduct ordinary and necessary expenses paid in connection with operating a trade or business. Sec. 162(a); Boyd v. Commissioner, 122 T.C. 305, 313 (2004). On the other hand section 262(a) generally disallows any deduction for personal, living, or family expenses.

Deductions for expenses attributable to travel ("including meals and lodging while away from home"), entertainment, gifts, and the use of "listed property" (as defined in section 280F(d)(4) and including passenger automobiles), if otherwise allowable, are subject to strict rules of substantiation. See sec. 274(d); Sanford v. Commissioner, 50 T.C. 823, 827 (1968), aff'd per curiam, 412 F.2d 201 (2d Cir. 1969); sec. 1.274-5T(a), Temporary Income Tax Regs., 50 Fed. Reg. 46014 (Nov. 6, 1985). With respect to deductions for these types of expenses, section 274(d) requires that the taxpayer substantiate either by adequate records or by sufficient evidence corroborating the taxpayer's own statement: (1) the amount of the expense, (2) the time and place the expense was incurred, (3) the business purpose of the expense, and (4) in the case of an entertainment or gift expense, the business relationship to the taxpayer of each expense incurred. For "listed property" expenses, the taxpayer must establish the amount of business use and the amount

of total use for such property.  <u>See</u> sec. 1.274-5T(b)(6)(i)(B), Temporary Income Tax Regs., 50 Fed. Reg. 46016 (Nov. 6, 1985).

Substantiation by adequate records requires the taxpayer to maintain an account book, a diary, a log, a statement of expense, trip sheets, or a similar record prepared contemporaneously with the expenditure and documentary evidence (e.g., receipts or bills) of certain expenditures.  Sec. 1.274-5(c)(2)(iii), Income Tax Regs.; sec. 1.274-5T(c)(2), Temporary Income Tax Regs., 50 Fed. Reg. 46017 (Nov. 6, 1985).  Substantiation by other sufficient evidence requires the production of corroborative evidence in support of the taxpayer's statement specifically detailing the required elements.  Sec. 1.274-5T(c)(3), Temporary Income Tax Regs., 50 Fed. Reg. 46020 (Nov. 6, 1985).

I.  <u>Schedule E Deductions</u>

A.  <u>Depreciation</u>

Petitioners claimed deductions of $5,769 and $5,769 for depreciation on the Schedules E attached to their 2013 and 2014 Federal income tax returns, respectively.  The deductions relate to the rental property.

Under section 167(a), taxpayers are allowed as a deduction a reasonable allowance for the exhaustion and wear and tear of property used in a trade or business or property held for the production of income.  The deduction for any

tangible property is generally determined by using the applicable depreciation method, an applicable recovery period, and the applicable convention. Sec. 168(a). The period of depreciating an asset begins when the asset is first placed in service. Sec. 1.167(a)-10(b), Income Tax Regs. Depreciation is generally proven by using the cost of the property as its basis. Secs. 167(c), 1011, 1012; sec. 1.167(g)-1, Income Tax Regs. If a taxpayer pays a lump sum for depreciable property and nondepreciable property, as in the case of real property with improvements, the cost must be apportioned between the land and the improvements. Broz v. Commissioner, 137 T.C. 46, 58 (2011), aff'd, 727 F.3d 621 (6th Cir. 2013); sec. 1.167(a)-5, Income Tax Regs.

Petitioners did not provide a depreciation schedule or otherwise produce any records to show their basis in the rental property. Without that evidence the proper amount of allowable annual depreciation cannot be determined. That being so, they are not entitled to the deductions here in dispute.

B. Mortgage Interest

Petitioners claimed deductions of $9,974 and $9,077 for mortgage interest on the Schedules E attached to their 2013 and 2014 Federal income tax returns, respectively. The deductions relate to the rental property.

Petitioners provided a copy of a Form 1098, Mortgage Interest Statement, for 2013 as well as a statement from La Salle State Bank dated December 31, 2014, to substantiate their mortgage interest deductions. These documents substantiate the amounts claimed for mortgage interest on petitioners' 2013 and 2014 returns. Accordingly, we find that petitioners are entitled to the deductions for mortgage interest as claimed on their returns.

C. Repairs

Petitioners claimed deductions of $2,694 and $769 for repairs on the Schedules E attached to their 2013 and 2014 Federal income tax returns, respectively. According to respondent, petitioners have not established that the repairs relate to the rental property.

Respondent's concern with respect to whether amounts expended for repairs relate to the rental property or the commercial development is understandable, especially considering petitioners' lack of contemporaneous schedules or other records identifying to which enterprise expenses relate. Nonetheless, we accept Mrs. Minarich's testimony that the repairs are attributable to the rental property. On the basis of the substantiating documents submitted, such as invoices and receipts, we find that petitioners are entitled to deductions of $1,007 and $550 for repairs for 2013 and 2014, respectively.

## II. S Corporation Losses

Petitioners' pro rata shares of income from Real Appeal increased as a result of the disallowance of deductions claimed on Real Appeal's Forms 1120S for the years in issue. According to respondent, with respect to any deduction in excess of the amounts respondent now concedes, see supra note 2, petitioners have failed to substantiate that the expense was paid, establish that the expense was an ordinary and necessary business expense, or demonstrate to which enterprise the expense related.

Petitioners provided bank and credit card statements and sales receipts substantiating the partial payment of cost of goods sold claimed on Real Appeal's Forms 1120S for the year in issue. These documents, along with Mrs. Minarich's testimony, show that various payments qualify as ordinary and necessary business expenses. Real Appeal sold gluten-free baking products and mixes through retail stores during the years in issue, and it follows that it would have purchased the products described in the substantiating documents. Accordingly, we find that petitioners are entitled to deductions for costs of goods sold of $2,640 and $1,407 on Real Appeal's Forms 1120S for 2013 and 2014, respectively.

Other deductions shown on the Real Appeal Forms 1120S in excess of amounts respondent now allows are not allowable because petitioners: (1) failed

to establish that the related expense was ordinary and necessary to Real Appeal, or (2) failed to substantiate the amount claimed.  See secs. 162(a), 262(a), 274(d), 6001.  Accordingly, except to the extent we have allowed amounts for costs of goods sold, we sustain respondent's disallowance of deductions claimed on Real Appeals' Forms 1120S for the years in issue in excess of the amounts respondent now concedes.

## III.  Section 6662(a) Accuracy-Related Penalty

Lastly, we consider whether petitioners are liable for a section 6662(a) accuracy-related penalty for either year in issue.  The evidence shows that respondent has met his burden of production with respect to the imposition of accuracy-related penalties.  See secs. 6662(a) and (b)(1) and (2), 6751(b)(1), 7491(c); Higbee v. Commissioner, 116 T.C. 438, 446-447 (2001).

The accuracy-related penalty does not apply, however, to any part of an underpayment of tax if it is shown that the taxpayer acted with reasonable cause and in good faith with respect to that portion.  Sec. 6664(c)(1).  The determination of whether a taxpayer acted in good faith is made on a case-by-case basis, taking into account all the pertinent facts and circumstances.  Sec. 1.6664-4(b)(1), Income Tax Regs.  Petitioners bear the burden of proving that they had reasonable

cause and acted in good faith with respect to the underpayments. See Higbee v. Commissioner, 116 T.C. at 449.

According to petitioners, they should not be liable for the penalties because they relied upon their paid income tax return preparer to prepare all of the returns involved in this matter.

Reliance on professional advice will absolve the taxpayer if "such reliance was reasonable and the taxpayer acted in good faith." Sec. 1.6664-4(b)(1), Income Tax Regs. Under certain circumstances, a taxpayer's reliance upon professional advice may establish the taxpayer's "reasonable cause" and "good faith" with respect to an underpayment of tax if the taxpayer establishes that: (1) the professional was provided with complete and accurate information, (2) an incorrect return was a result of the preparer's mistakes, and (3) the taxpayer demonstrates good-faith reliance on a competent professional. See Estate of Goldman v. Commissioner, 112 T.C. 317, 324 (1999), aff'd without published opinion sub nom. Schutter v. Commissioner, 242 F.3d 390 (10th Cir. 2000); see also Neonatology Assocs., P.A. v. Commissioner, 115 T.C. 43, 99 (2000), aff'd, 299 F.3d 221 (3d Cir. 2002).

Petitioners engaged a paid income tax return preparer to prepare their Federal income tax returns for the years in issue. They furnished their return

preparer with the source documents underlying the deductions claimed on their returns along with the Real Appeal QuickBooks reports before each return was drafted. Considering all the facts and circumstances, we find that petitioners have shown reasonable cause and that they acted in good faith in respect of the underpayments of tax. Therefore, we hold that petitioners are not liable for a section 6662(a) accuracy-related penalty for either year in issue.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>under Rule 155</u>.