T.C. Summary Opinion 2018-44

UNITED STATES TAX COURT

JAMES E. LAWSON AND CHRISTIANE D. LAWSON, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 24688-15S.                          Filed September 17, 2018.

James E. Lawson and Christiane D. Lawson, pro sese.

Angela B. Reynolds, for respondent.

SUMMARY OPINION

CARLUZZO, Chief Special Trial Judge:  This case was heard pursuant to

the provisions of section 7463 of the Internal Revenue Code in effect when the

petition was filed.[1]  Pursuant to section 7463(b), the decision to be entered is not

_____

[1]Unless otherwise indicated, section references are to the Internal Revenue
(continued...)

reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

In a notice of deficiency dated June 25, 2015 (notice), respondent determined deficiencies in, and penalties with respect to, petitioners' Federal income tax for 2012 and 2013 as follows:

| Year | Deficiency | Penalty sec. 6662(a) |
|------|-----------|---------------------|
| 2012 | $6,446 | $1,289.20 |
| 2013 | 6,716 | 1,343.20 |

After concessions,[2] the issues for decision for each year are whether petitioners are: (1) entitled to deductions claimed on a Schedule E for taxes, mortgage interest, and insurance, (2) entitled to deduct an S corporation loss

_____

[1](...continued)
Code of 1986 (Code), as amended, in effect for the years in issue. Rule references are to the Tax Court Rules of Practice and Procedure.

[2]Petitioners concede the adjustments in the notice for: (1) deductions claimed on Schedules E, Supplemental Income and Loss, for depreciation expense or depletion, repairs, and cleaning and maintenance for 2012 and 2013 and (2) the charitable contribution deduction claimed on Schedule A, Itemized Deductions, for 2012. Respondent concedes that to the extent this Court finds petitioners are not entitled to a Schedule E deduction for 2013 for mortgage interest, petitioners are entitled to a Schedule A deduction for mortgage interest of $2,061.34 in excess of the amount already claimed on the Schedule A.

claimed on Schedule E, and (3) liable for a section 6662(a) accuracy-related penalty.

## Background

Some of the facts have been stipulated and are so found. At the time the petition was filed, petitioners resided in Illinois.

Petitioners resided in Manhattan, Illinois (Manhattan property), during 2012 and until June 21, 2013, at which point they sold the Manhattan property for $550,000 and moved to Manteno, Illinois (Manteno property). At the time of the sale, the Manhattan property was encumbered by a mortgage of $206,444.68, which was paid in full with the sale proceeds. Petitioners obtained a mortgage to finance the purchase of the Manteno property.

According to a copy of a homeowner's insurance policy, petitioners insured the "dwelling" on the Manhattan property for $789,000 during the coverage period of November 1, 2012 through November 1, 2013. That policy required an annual premium of $1,619. According to another homeowner's insurance policy, petitioners insured the "dwelling" on the Manhattan property for $812,000 during

the coverage period of November 1, 2013 through November 1, 2014.[3] That policy required an annual premium of $1,673.

During 2013 petitioners paid $4,888.48 of mortgage interest with respect to the mortgage on the Manhattan property and $1,722.18 of mortgage interest with respect to the mortgage on the Manteno property.

The Manhattan and Manteno properties each consisted of a residential dwelling as well as a pole-barn garage that was used in petitioners' steel transportation business, Jelco Transportation, Inc. (Jelco). In 1973 Mr. Lawson began a business that he operated as a sole proprietorship until petitioners incorporated Jelco in 1995. From then on the business was conducted through Jelco. At all times relevant Jelco was an S corporation owned in equal shares by petitioners. Jelco's corporate offices were shown to be at the same address as petitioners' residence during each year in issue.

Jelco used the pole-barn garages on the Manhattan and Manteno properties to store equipment, including tractors, trailers, and trucks, used in its business. There is no written lease that evidences the arrangement. The evidence is

---

[3]The parties stipulated that the Manhattan property was sold on June 21, 2013. Nonetheless, the record shows that petitioners insured the Manhattan property through November 1, 2014, a date almost 1-1/2 years after the sale. This apparent discrepancy has not been explained.

inconsistent and inconclusive regarding any rent that Jelco might have paid to petitioners for the use of the garages.

During the years in issue Mrs. Lawson was employed by Jelco as its secretary and treasurer. Apparently, Jelco agreed to pay Mrs. Lawson a weekly salary of $1,000; however, no cash payments were actually made. In lieu of cash salary payments to Mrs. Lawson, Jelco apparently paid some of petitioners' personal expenses. The specifics of any such arrangements cannot be determined from what has been submitted.

Jelco maintained a corporate bank account at First Bank of Manhattan during the years in issue. Some, if not many, of petitioners' personal expenses were paid with checks drawn on the business account. For example, during 2012 petitioners' mortgage payments on the Manhattan property were made from that account. Those payments include $11,693.11 of mortgage interest.

Petitioners' timely filed joint 2012 and 2013 Federal income tax returns were prepared by a paid income tax return preparer. On each return petitioners reported on Schedule E income and expenses attributable to Jelco's use of the pole-barn garages. Petitioners reported $28,000 of income on each Schedule E and expenses as follows:

| Expense | 2012 | 2013 |
|---|---|---|
| Cleaning and maintenance | $605 | $680 |
| Insurance | 3,030 | 2,020 |
| Mortgage interest paid to banks, etc. | 5,846 | 4,336 |
| Repairs | 888 | 1,864 |
| Taxes | 7,058 | 10,395 |
| Depreciation or depletion | 1,018 | 976 |

Petitioners' returns each also include Schedules A. As relevant here, the following deductions are claimed:

| Deduction | 2012 | 2013 |
|---|---|---|
| Real estate taxes | $7,058 | $10,395 |
| Home mortgage interest | 5,846 | 4,336 |
| Points not reported to you on Form 1098 | -0- | 463 |

Jelco filed a Form 1120S, U.S. Income Tax Return for an S Corporation, for each year also prepared by petitioners' return preparer. The 2012 and 2013 Forms 1120S show losses of $26,606 and $73,935, respectively. Petitioners' pro rata shares of Jelco's net operating losses for 2012 and 2013 are taken into account in the computation of the adjusted gross income shown on petitioners' returns.

In the notice respondent: (1) disallowed the deductions claimed on the Schedules E for 2012 and 2013, (2) disallowed the S corporation losses claimed on the Schedules E for 2012 and 2013, (3) disallowed $5,835 of a $6,687 charitable contribution deduction claimed on Schedule A for 2012, and

(4) imposed a section 6662(a) accuracy-related penalty for each year on several grounds, including "negligence or disregard of rules or regulations" and "substantial understatement of income tax".  According to the notice, the deductions claimed on the Schedules E were disallowed because petitioners "did not establish that the business expense shown on * * * [their] tax return was paid or incurred during the taxable year and that the expense was ordinary and necessary to * * * [their] business."  Some of the adjustments made in the notice have been agreed to between the parties or conceded by one or the other of them, and other adjustments are computational.  Those adjustments will not be discussed.

## Discussion

### I.  Schedule E Deductions

As we have observed in countless opinions, deductions are a matter of legislative grace, and the taxpayer bears the burden of proof to establish entitlement to any claimed deduction.[4]  Rule 142(a); INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934).  A taxpayer claiming a deduction on a Federal income tax

---

[4]Petitioners do not claim and the record does not demonstrate that the provisions of sec. 7491(a) are applicable, and we proceed as though they are not.

return must demonstrate that the deduction is allowable pursuant to some statutory provision and must further substantiate that the expense to which the deduction relates has been paid or incurred. Sec. 6001; Hradesky v. Commissioner, 65 T.C. 87, 90 (1975), aff'd per curiam, 540 F.2d 821 (5th Cir. 1976); Meneguzzo v. Commissioner, 43 T.C. 824, 831-832 (1965); sec. 1.6001-1(a), Income Tax Regs.

Taxpayers may deduct ordinary and necessary expenses paid in connection with operating a trade or business. Sec. 162(a); Boyd v. Commissioner, 122 T.C. 305, 313 (2004). To be ordinary the expense must be of a common or frequent occurrence in the type of business involved. Deputy v. du Pont, 308 U.S. 488, 495 (1940). To be necessary an expense must be appropriate and helpful to the taxpayer's business. Welch v. Helvering, 290 U.S. 111, 113 (1933). The expenditure must be "directly connected with or pertaining to the taxpayer's trade or business". Sec. 1.162-1(a), Income Tax Regs. On the other hand, section 262(a) generally disallows a deduction for personal, living, or family expenses.

With these fundamental principles of Federal income taxation in mind, we consider petitioners' claims to the various deductions in dispute for the years in issue.

A.  Taxes

Petitioners claimed deductions of $7,058 and $10,395 for taxes on their Schedules E attached to their 2012 and 2013 returns, respectively.  According to respondent, petitioners have not (1) established that the expenses were paid or (2) shown that these expenses were "ordinary and necessary" to petitioners' Schedule E business.

Petitioners did not provide any evidence of the payment of real property taxes in 2012.  Petitioners provided a photocopy of a $6,946.20 check from Jelco to Will County, Illinois, for real property taxes paid in 2013.  The check is corroborated by a debit from Jelco's checking account at First Bank of Manhattan on June 4, 2013.  Having elected to conduct the business in corporate form, petitioners are bound by the Federal income tax consequences of that election. See Higgins v. Smith, 308 U.S. 473 (1940).  Jelco's corporate existence cannot be disregarded for Federal income tax purposes, see Moline Props., Inc. v. Commissioner, 319 U.S. 436 (1943), and thus petitioners are not entitled to deduct amounts paid by Jelco for petitioners' expenses on their 2013 Schedule E.

Otherwise, petitioners have not substantiated the Schedule E deductions for taxes for either year in excess of the amounts respondent has already allowed as

deductions on petitioners' Schedules A. Accordingly, petitioners are not entitled to deductions for taxes on their 2012 and 2013 Schedules E.

### B. Mortgage Interest

Petitioners claimed deductions of $5,846 and $4,336 for mortgage interest on their Schedules E attached to their 2012 and 2013 returns, respectively. According to respondent, petitioners have not (1) established that the expenses were paid or (2) shown that these expenses were "ordinary and necessary" to petitioners' Schedule E business.

Subject to certain limitations, section 163(h)(2)(D) allows a deduction for qualified interest paid on acquisition indebtedness or home equity indebtedness with respect to a qualified residence. A qualified residence for purposes of section 163 includes the taxpayer's primary residence and one other home which is used by the taxpayer as a residence (within the meaning of section 280A(d)(1)).

With respect to 2012, bank statements for a checking account held by Jelco at First Bank of Manhattan show that Jelco made payments of $11,693.11 of mortgage interest towards petitioners' mortgage on the Manhattan property. As noted above, petitioners are not entitled to deduct on their Schedule E amounts paid by Jelco for their expenses, see Moline Props., Inc. v. Commissioner, 319 U.S. 436; Higgins v. Smith, 308 U.S. 473, and petitioners have not otherwise

substantiated that they paid mortgage interest in excess of the amount respondent has already allowed as a deduction on the Schedule A.

In 2013 petitioners paid $4,888.48 of mortgage interest with respect to the mortgage on the Manhattan property and $1,722.18 of mortgage interest with respect to the mortgage on the Manteno property. Although petitioners erroneously reported the mortgage interest deduction on Schedule E, we find that they are entitled to an additional Schedule A mortgage interest deduction of $2,274.66, which includes respondent's concession, for 2013.

C. Insurance

Petitioners claimed deductions of $3,030 and $2,020 for insurance on their Schedules E attached to their 2012 and 2013 returns, respectively. According to respondent, petitioners (1) have not established that the expenses were paid or (2) shown that these expenses were "ordinary and necessary" to petitioners' Schedule E business.

Although petitioners provided copies of their homeowner's insurance policies insuring the "dwelling" on the Manhattan property during the years in issue, petitioners did not provide any records to substantiate payment of the insurance premiums due with respect to the insurance policies. Accordingly,

petitioners are not entitled to a deduction for insurance expenses for either year in issue.

## II. S Corporation Losses

Respondent disallowed petitioners' deductions of the losses passed through to them from Jelco in 2012 and 2013 because petitioners failed to establish that either had any basis in Jelco. A shareholder may not deduct a loss passed through to him or her from an S corporation to the extent that the loss exceeds the sum of the shareholder's adjusted basis in his or her stock in the S corporation, plus the shareholder's adjusted basis of any debt that the S corporation owes to the shareholder. See sec. 1366(d)(1).

A taxpayer must establish the basis of his stock for purposes of determining the amount of gain or loss he must recognize. "Proof of basis is a specific fact which the taxpayer has the burden of proving." O'Neill v. Commissioner, 271 F.2d 44, 50 (9th Cir. 1959), aff'g T.C. Memo. 1957-193.

According to petitioners, they have made numerous loans to Jelco since its incorporation, as reflected in the basis analysis introduced into evidence, that increase their bases in their shares sufficient to entitle them to deduct the Jelco losses on their 2012 and 2013 Schedules E. Those loans, however, are not evidenced by promissory notes or other credible evidence, nor have petitioners

established that any funds were actually transferred from them to Jelco.

Furthermore, petitioners' return preparer, who was responsible for preparing

petitioners' returns and Jelco's returns for 2012 and 2013, testified that

petitioners' bases in their shares of Jelco were "zero" during each year in issue.

Because petitioners have failed to establish sufficient bases in their Jelco stock to

allow for the deduction of the losses attributable to that corporation, they are not

entitled to deductions for those losses for the years in issue.

III.  Section 6662(a) Accuracy-Related Penalty

Lastly, we consider whether petitioners are liable for a section 6662(a)

accuracy-related penalty for either year in issue.  As relevant here, section 6662(a)

imposes a penalty of 20% of the portion of an underpayment of tax attributable to

the taxpayer's:  (1) negligence or disregard of rules or regulations or (2)

substantial understatement of income tax.  Sec. 6662(a) and (b)(1) and (2).

"Negligence" includes any failure to make a reasonable attempt to comply with the

provisions of the Code, including any failure to keep adequate books and records

or to substantiate items properly.  See sec. 6662(c); sec. 1.6662-3(b)(1), Income

Tax Regs.  A "substantial understatement of income tax" includes an

understatement of income tax that exceeds the greater of 10% of the tax required

to be shown on the return or $5,000.  See sec. 6662(d)(1)(A); sec. 1.6662-4(b),

Income Tax Regs. Respondent bears the burden of production with respect to the imposition of the section 6662(a) accuracy-related penalties. See sec. 7491(c); Higbee v. Commissioner, 116 T.C. 438, 446-447 (2001).

Section 6751(b)(1) provides that, subject to certain exceptions in section 6751(b)(2), no penalty shall be assessed unless the initial determination of the assessment is personally approved in writing by the immediate supervisor of the individual making the determination or such higher level official as the Secretary may designate. Written approval of the initial penalty determination under section 6751(b)(1) must be obtained no later than the date the notice of deficiency is issued or the date the Commissioner files an answer or amended answer asserting the penalty. Chai v. Commissioner, 851 F.3d 190, 221 (2d Cir. 2017), aff'g in part, rev'g in part T.C. Memo. 2015-42; see also Graev v. Commissioner, 149 T.C. __ (Dec. 20, 2017), supplementing and overruling in part 147 T.C. 460 (2016). Compliance with section 6751(b)(1) is part of the Commissioner's burden of production in any deficiency case in which a penalty subject to section 6751(b)(1) is asserted. Chai v. Commissioner, 851 F.3d at 221.

The section 6662(a) accuracy-related penalties determined in the notice were properly approved as required by section 6751(b)(1). The record includes a Civil Penalty Approval Form, approving imposition of accuracy-related penalties

against petitioners for 2012 and 2013 and executed by the IRS tax examiner's immediate supervisor before the date the notice was issued. Respondent has proven sufficient facts to satisfy the burden of production as to that requirement.

Petitioners failed to maintain adequate substantiating records for expenses underlying the deductions claimed on their 2012 and 2013 returns. Moreover, the understatement of income tax for each year exceeds the greater of 10% of the tax required to be shown on the return or $5,000. Therefore, respondent has met his burden of production with respect to the imposition of section 6662(a) accuracy-related penalties.

The accuracy-related penalty does not apply to any part of an underpayment of tax if it is shown that the taxpayer acted with reasonable cause and in good faith with respect to that portion. Sec. 6664(c)(1). The determination of whether a taxpayer acted in good faith is made on a case-by-case basis, taking into account all the pertinent facts and circumstances. Sec. 1.6664-4(b)(1), Income Tax Regs. Petitioners bear the burden of proving that they had reasonable cause and acted in good faith with respect to the underpayments. See Higbee v. Commissioner, 116 T.C. at 449.

Reliance on professional advice will absolve the taxpayer if "such reliance was reasonable and the taxpayer acted in good faith." Sec. 1.6664-4(b)(1), Income

Tax Regs. Under certain circumstances, a taxpayer's reliance upon professional advice may establish the taxpayer's "reasonable cause" and "good faith" with respect to an underpayment of tax if the taxpayer establishes that: (1) the professional was provided with complete and accurate information, (2) an incorrect return was a result of the preparer's mistakes, and (3) the taxpayer demonstrates good-faith reliance on a competent professional. See Estate of Goldman v. Commissioner, 112 T.C. 317, 324 (1999), aff'd without published opinion sub nom. Schutter v. Commissioner, 242 F.3d 390 (10th Cir. 2000); see also Neonatology Assocs., P.A. v. Commissioner, 115 T.C. 43, 99 (2000), aff'd, 299 F.3d 221 (3d Cir. 2002).

Although their returns were prepared by a paid income tax return preparer, the return preparer used income and expense amounts petitioners provided. Apparently, no source documents underlying the deductions were provided to the return preparer; according to the return preparer, petitioners had "horrible books and records". Because petitioners did not furnish the return preparer with complete and accurate information, they failed to establish that their reliance upon the return preparer constitutes "reasonable cause" and "good faith" with respect to the underpayments of tax. Moreover, petitioners failed to explain their conceded Schedule E deductions for 2012 and 2013 and Schedule A charitable contribution

deduction for 2012.  See supra note 2.  Accordingly, respondent's imposition of section 6662(a) accuracy-related penalties for 2012 and 2013 is sustained.

To reflect the foregoing,

Decision will be entered

under Rule 155.